# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 12, 2002 Session

## WANDA F. CHERRY, ET AL. v. FIRST STATE BANK

**Appeal from the Circuit Court for Sevier County**
**No. 2001-514-I    Ben W. Hooper, II, Judge**

**FILED FEBRUARY 11, 2003**

**No. E2002-00981-COA-R3-CV**

---

Wanda F. Cherry and Daniel R. Greene ("Plaintiffs") are the owners of property located on the parkway in Pigeon Forge. Wayne Burroughs ("Burroughs") owned property adjacent to the Plaintiffs' property, but Burroughs' property did not adjoin the parkway. Burroughs leased Plaintiff's property and used their property and his property to operate a business. During this time, Burroughs borrowed money from First State Bank ("Defendant"). Burroughs' leasehold interest in Plaintiffs' property was part of the collateral for this loan. After Burroughs filed for bankruptcy, his leasehold interest in Plaintiffs' property was sold at auction. Defendant was the highest bidder at the auction. Defendant paid rent for a period of time, but then stopped paying rent. Plaintiffs sued for past due rent. The Trial Court granted summary judgment to Plaintiffs and awarded damages totaling $127,968.60. Defendant appeals the grant of summary judgment to Plaintiffs. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of
the Circuit Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

C. Mark Troutman, LaFollette, Tennessee, for the Appellant First State Bank.

Rob Quillin, Knoxville, Tennessee, for the Appellees Wanda F. Cherry and Daniel R. Greene.

# OPINION

## Background

Plaintiffs filed this lawsuit seeking unpaid rent. In December 1989, Plaintiffs entered into a lease with Burroughs which was amended in February 1993. The lease and amendment set forth the respective obligations of the parties to the lease, including the duration of the lease and the monthly rent. Burroughs filed for bankruptcy in 1999, and the Bankruptcy Court eventually entered an Order which provided as follows:

> The leasehold estate of the Debtor [Wayne Burroughs] with [Plaintiffs] shall be sold subject to their review of the financial ability of the high bidder to perform under the lease. The Lessor shall have five days to file a written objection to the high bidder's qualifications otherwise they will be deemed to have consented to the assignment. In the event of any objection, the Court shall set the objection for hearing on September 16, 1999 ….

An auction took place pursuant to the Bankruptcy Court's Order on September 10, 1999, and Defendant was the winning bidder of the leasehold estate. As a result of Defendant's purchase of the leasehold estate, Plaintiffs claim Defendant was assigned the rights and liabilities under the lease. From October 1999 through February 2001, Defendant made rental payments in the amount set forth in the lease and the amendment thereto. Beginning in March 2001, Defendant stopped paying rent. Plaintiffs claim Defendant was $74,520.00 in arrears at the time the complaint was filed.[1] Plaintiffs sought past due rent, prejudgment interest, as well as attorney fees pursuant to the terms of the lease.

Plaintiffs filed a motion for summary judgment and attached the affidavit of Sam Furrow ("Furrow"). Furrow conducted the auction where the relevant assets of Burroughs were sold. According to Furrow, initially the real property owned by Burroughs and Burroughs' leasehold interest in Plaintiffs' adjacent property were auctioned separately. Then, the real property owned by Burroughs and the leasehold interest were auctioned together to see if a higher price could be obtained by auctioning them as a "package." When the property and leasehold interest were auctioned separately, the amount of the highest bids combined totaled $825,000. When the two items were auctioned as a package, the highest bid was $975,000. Thus, Borroughs' real property and his leasehold interest in Plaintiffs' property were sold as a "package" to Defendant as the highest bidder. In his affidavit, Furrow also explained:

---

[1] This lawsuit actually began in the General Sessions Court for Sevier County and was later appealed to the Circuit Court. Plaintiffs then moved to amend the original pleading to increase the amount of damages sought inasmuch as the claimed damages continued to increase with the passing months. For ease of reference, we will refer to the amended complaint as the complaint.

Prior to beginning the auction, I explained the terms and conditions under which the property was being sold. First, I explained that this was a sale of property held in a bankruptcy estate and that I was working for Wayne Burroughs, the debtor-in-possession, and his attorney, John Newton. Later, I explained that the Leasehold Interest was being sold under the original terms of the lease plus an addendum that was executed in February of 1993. Copies of the lease and addendum were made available to any prospective bidders who wished to see them.… I explained that the property was being sold subject to the lease and the addendum.…

Plaintiff Wanda Cherry ("Cherry") also furnished her affidavit in support of the motion for summary judgment. In her affidavit, Cherry discussed the lease and amendment entered into between Plaintiffs and Burroughs. When Burroughs went bankrupt, the leasehold interest was sold at auction and Plaintiffs were allowed five days to object to the highest bidder's qualifications. Cherry was present at the auction and detailed Furrow's explanation prior to the auction to the effect that the leasehold interest was being sold subject to the terms of the lease and the amendment thereto. Cherry was present when Defendant purchased both the real property and the leasehold interest owned by Burroughs as a package for $975,000. According to Cherry, Defendant began making monthly rental payments in October 1999, after it purchased the leasehold interest, and continued to do so through February 2001. Cherry maintained Defendant stopped making rental payments in March 2001, and the amount of arrears when the complaint was filed totaled $74,520. Several documents were attached to Cherry's affidavit, including an Assignment of Lease dated October 12, 1999, which was recorded with the Register of Deeds for Sevier County. The Assignment of Lease was entered into between Burroughs and Defendant and provides, in relevant part, as follows:

> **WHEREAS,** Assignor [i.e., Burroughs] holds a leasehold estate in certain real property located in Pigeon Forge, Tennessee, more particularly described in Exhibit "A" hereof; and
>
> **WHEREAS,** said leasehold estate was established by a Lease Agreement dated December 28, 1989, of record in Misc. Book 167, Page 191, as amended in Misc. Book 212, Page 77, both in the Sevier County Register of Deed's Office; and
>
> **WHEREAS,** Assignor desires to assign his interest in said Lease to Assignee.
>
> **NOW, THEREFORE,** for and in consideration of the sum of Ten Dollars … Assignor hereby assigns to Assignee all his right, title and interest in that certain Lease Agreement ….

The Assignment of Lease contains a provision that was crossed out, presumably because Defendant did not agree to the language. The portion that was crossed out states: "Assignee hereby assumes all obligations and conditions binding upon the Lessee in said lease, unless otherwise stated."

In opposition to Plaintiffs' motion for summary judgment, Defendant filed the affidavit of its attorney, C. Mark Troutman ("Troutman"). In this affidavit Troutman attacks Plaintiffs' use of the Assignment of Lease. According to Troutman, a problem arose when Defendant was attempting to sell to a third party the real property and leasehold interest it purchased at the auction. In order to resolve this problem, the parties agreed to execute certain affidavits to clear up problems in the chain of title to the property. Troutman claims the parties agreed these affidavits would not be used in the present litigation. In his affidavit, Troutman stated the "Assignment of Lease was only executed by the Defendant after reaching this agreement."

Defendant also attached the affidavit of Keebler Williams ("Williams"), its Senior Vice President. Williams explained Defendant had lent Burroughs money and as security for that loan, Defendant obtained a Deed of Trust on the real property owned by Burroughs as well as "a security interest through a Leasehold Deed of Trust in a certain leasehold estate held by Burroughs in real property adjacent to the other property owned by Burroughs." Defendant also obtained a Collateral Assignment of Lease which was entered into between Defendant and Burroughs. This document provides, among other things, as follows:

> If default be made by the Borrower in the payment or performance of the Loan, then Bank shall have the option of taking over the leased premises, provided, however, that in the event Bank elects to exercise said option of taking over the demised premises for the purpose of operating the same, written notice of its election to do so shall be mailed promptly by Bank to the Lessor. Bank shall not have the right to possession of the leased premises until such notice is received by Lessor.…

> It is understood and agreed that so long as the Bank shall not have exercised its option under the foregoing provisions hereof as to the leased premises, the Bank shall not be liable for rent or any other obligation of the Borrower under and by virtue of or in connection with the Lease, and the Borrower shall remain liable for such rent and obligations.

Williams stated he attended the auction on Defendant's behalf after Burroughs filed for bankruptcy. When the bids from third parties were deemed unacceptable to Defendant, Defendant bid to protect its interests. While Defendant thereafter accepted a deed from Burroughs for the real property Burroughs owned in fee simple, it claims to have rejected an Assignment of

Lease tendered by Burroughs which pertained to the leased property[2] Williams claimed Defendant made lease payments to Plaintiffs solely for the purpose of preserving its rights under the lease. According to Williams, because Defendant neither assumed possession of the premises nor provided Plaintiffs written notice of its intent to do so, in accordance with the language in the Collateral Assignment of Lease, Defendant never legally obligated itself to make rent payments. Even though Plaintiffs are not parties to the Collateral Assignment of Lease, this document does contain their signatures indicating their consent to same. The Collateral Assignment of Lease is dated February 13, 1996, several years prior to Burroughs filing for bankruptcy.

In response to Williams' affidavit, Plaintiff Cherry filed a supplemental affidavit claiming Defendant was in possession of the leased premises after it purchased the lease at auction, and further "[Defendant's] real estate agent, Dick Bales, placed a FOR SALE sign on the property without asking for my consent and marketed my property with the adjacent property owned by [Defendant]."

After considering the various documents on file, the Trial Court concluded there were no genuine issues of material fact and granted Plaintiffs' motion for summary judgment. The Trial Court awarded damages of $114,145.90 for unpaid rent, $13,822.70 in attorney fees, and ten percent post-judgment interest. Defendant appeals the grant of summary judgment to Plaintiffs.[3]

## Discussion

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See*

---

[2] As set forth in Troutman's affidavit, at some point in time an Assignment of Lease was in fact entered into between Burroughs and Defendant.

[3] No issues are raised by any of the parties with respect to the amount of damages awarded by the Trial Court.

*Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

On appeal, Defendant argues granting summary judgment was error because the Trial Court's decision was directly contrary to the terms of the 1996 Collateral Assignment of Lease, which obligated Defendant to pay rent only if Defendant provided Plaintiffs notice in writing of its intent to assume possession of the leased premises. Plaintiffs counter this argument, claiming regardless of what the language in the 1996 Collateral Assignment of Lease says, when Defendant

purchased the leasehold interest at the bankruptcy auction in 1999, it became obligated to pay rent in accordance with the terms of the lease.

Notwithstanding the terms of the 1996 Collateral Assignment of Lease, it is clear that Burroughs' entire interest in the leasehold was sold to Defendant at the bankruptcy auction. The Bankruptcy Court certainly contemplated the winning bidder paying rent or it would not have given Plaintiffs the opportunity to object to the financial qualifications of the winning bidder. In fact, the Bankruptcy Court's Order provided that the sale of Burroughs' leasehold interest would be "sold subject to their review of the financial ability of the high bidder to perform under the lease." Clearly this Order concerns the financial ability of the high bidder, Defendant, to pay the rent. If Defendant as the purchaser was to have no obligation to pay the rent, this "review" would have served no purpose. It is undisputed that Defendant purchased both the real property owned by Burroughs and Burroughs' leasehold interest in Plaintiffs' property.

It likewise is undisputed that after Defendant purchased Burroughs' leasehold interest, Burroughs had no interest or reversionary interest in the leasehold estate. This being so, an assignment of the lease to Defendant occurred when Defendant purchased the "package", which included the leasehold estate, at the bankruptcy auction. *See First American National Bank v. Chicken System of American, Inc.*, 510 S.W.2d 906, 908 (Tenn. 1974). Further evidence that Defendant's purchase of Burroughs' leasehold interest was an assignment of the lease is the language of the Bankruptcy Court's Order authorizing the sale: "The Lessor shall have five days to file a written objection to the high bidder's qualifications otherwise they will be deemed to have *consented to the assignment*" (emphasis added). The Bankruptcy Court Order authorizing this sale both provided that it was to be a sale resulting in an assignment of Burroughs' leasehold interest to the purchaser and gave notice of this fact to potential purchasers, including Defendant.

If a third party had bought the leasehold interest at the auction, no one could seriously argue this third party would have no obligation to pay rent to Plaintiffs. We fail to see how the fact that Defendant rather than some third party was the high bidder changes this obligation. The 1996 Collateral Assignment of Lease very well may have defined the rights and obligations between Burroughs and Defendant. However, once Defendant purchased Burroughs' entire leasehold interest at the bankruptcy auction, the facts and Defendant's status changed. Defendant, because of his purchase at the bankruptcy auction, then possessed the entire leasehold interest and the corresponding duty to pay rent. Defendant's obligation to pay rent under the lease arises not under the 1996 Collateral Assignment of the Lease but rather as a result of its purchase of Burroughs' leasehold interest pursuant to the Bankruptcy Court's Order.

We agree with Plaintiffs that the controlling event in this lawsuit is Defendant's purchase of the leasehold interest at the bankruptcy auction in 1999. Once this occurred, the undisputed material facts show that Defendant was obligated to pay rent in accordance with the terms of the lease and the amendment thereto. Accordingly, the Trial Court properly granted summary judgment to Plaintiffs. On appeal, Plaintiffs make several additional arguments as to why the grant

of summary judgment in their favor should be upheld. In light of the foregoing conclusion, we pretermit these issues.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings, if any, consistent with this Opinion, and for collection of the costs below. Costs on appeal are assessed against the Appellant, First State Bank, and its surety.

_____
D. MICHAEL SWINEY, JUDGE