# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 9, 2014 Session

## DIANE WEST ET AL. v. SHELBY COUNTY HEALTHCARE CORPORATION D/B/A REGIONAL MEDICAL CENTER AT MEMPHIS

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-006339-07     Donna M. Fields, Judge**

---

**No. W2012-00044-SC-R11-CV - Filed December 19, 2014**

---

This appeal involves the ability of a hospital to use a hospital lien to recover from a third-party tortfeasor the unadjusted cost of the medical services it provided to a patient whose injuries were caused by the third party. Three patients were injured in separate, unrelated motor vehicle accidents in Memphis, Tennessee. All of them were treated at the Regional Medical Center at Memphis, and either their insurance company or TennCare paid the hospital the full amount of the adjusted charges for their care, in accordance with their contracts with the hospital. Despite receiving these payments, the hospital declined to release the lien it had perfected under the Tennessee Hospital Lien Act, Tenn. Code Ann. §§ 29-22-101 to -107 (2012). The patients filed suit in the Circuit Court for Shelby County seeking to quash the liens and monetary damages. In response, the hospital asserted that its refusal to release the liens was consistent with the Tennessee Hospital Lien Act and was permitted by its contracts with the patients' insurance companies. The trial court dismissed the suit on the merits, and the patients appealed to the Court of Appeals. The intermediate appellate court reversed the trial court, determining that the hospital could not maintain its lien because each of the patients' debts had been extinguished when the hospital accepted payment from the patients' insurance companies for the full amount of the hospital's bill based on the adjusted charges it had agreed to with either the patient's insurance company or TennCare. *West v. Shelby Cnty. Healthcare Corp.*, No. W2012-00044-COA- R3-CV, 2013 WL 500777 (Tenn. Ct. App. Feb. 11, 2013), *reh'g denied* (Tenn. Ct. App. Mar. 12, 2013). We granted two of the three patients' Tenn. R. App. P. 11 applications for permission to appeal. We have determined that, except for the unpaid co-pays and deductibles which are a patient's responsibility, neither the Tennessee Hospital Lien Act nor the hospital's contracts with the patients' insurance companies authorized the hospital to maintain its lien after the patients' insurance company paid the adjusted bill. However, we have also determined that one of the patients who had not extinguished her debt to the hospital was not entitled to have the lien against her extinguished.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

John I. Houseal, Jr. and Don L. Hearn, Jr., Memphis, Tennessee, for the appellant, Shelby County Healthcare Corporation, d/b/a Regional Medical Center at Memphis.

Eugene A. Laurenzi, Memphis, Tennessee, and A. Wilson Wages, Millington, Tennessee, for the appellees, Diane West, Jammie Heags-Johnson, and Charles Garland, Individually and on behalf of all other persons similarly situated.

W. Bryan Smith, Memphis, Tennessee, for the Amicus Curiae, Tennessee Association for Justice.

**OPINION**

**I.**

We begin with a general description of the billing and collection practices at issue in this case. The Regional Medical Center at Memphis ("the Med") is a nonprofit hospital operated by the Shelby County Healthcare Corporation. When a patient receives treatment at the hospital, the Med categorizes the patient according to the type of injury and the circumstances surrounding the injury. If the Med decides that a third party may be personally liable for the patient's injuries, the hospital perfects a lien for the full, unadjusted charges for the care the patient received while hospitalized, pursuant to the Tennessee Hospital Lien Act ("HLA"), Tenn. Code Ann. §§ 29-22-101 to -107 (2012).

Once the Med has perfected its lien, it pursues payment from the third-party tortfeasor for the full, unadjusted cost of the services provided to the patient. Frequently, while these collection efforts are proceeding, the Med also bills the patient's insurance company for the medical services the patient received while hospitalized. The cost of the services reflected on the bill to the insurance company is generally less than the cost of the services upon which the hospital based its lien because the hospital discounts its charges pursuant to the contract between the Med and the patient's insurance company.

As a matter of practice, the patient's insurance company pays the Med for the adjusted costs of the medical services. This payment discharges the debt the patient's insurance company and the patient owe to the hospital, except for any co-pays and deductibles that are the patient's responsibility. However, the Med does not release its lien when it receives the

insurance company's payment. Instead, the Med continues its efforts to collect the full, non-discounted cost of its treatment from the third-party tortfeasor. Whenever the Med is able to collect the full amount of its unadjusted cost from the third-party tortfeasor directly or from the patient's recovery from the third-party tortfeasor, it refunds any payment or payments already received from the patient's insurance company. The Med releases its lien only after it has been paid for the full, unadjusted cost of its services.

We now summarize the evidence regarding two of the three patients who originally filed suit in this case. We are omitting the evidence relating to the third patient because we did not grant the Med's Tenn. R. App. P. 11 application with regard to this patient.[1]

### DIANE WEST

Diane West was injured in a motor vehicle accident on July 30, 2006, in Memphis, Tennessee. She was treated at the Med and released on the same day. On August 10, 2006, the Med perfected a lien in the amount of $14,008.97 for medical services it provided Ms. West.

Ms. West was insured by Blue Cross Blue Shield of Alabama ("BCBSA") through Blue Cross Blue Shield of Tennessee ("BCBST"). The Med sent a statement to BCBSA which, consistent with its institution agreement with BCBST, billed BCBSA $3,215.72 for the medical services it had provided to Ms. West. BCBSA paid this bill in full, and Ms. West received a processed claim report from BCBSA dated March 8, 2007, stating that "[t]his provider has agreed to accept the eligible charge as payment in full . . . You owe [the Med]: $0.00."

Despite the payment received from BCBSA, the Med declined to release its $14,008.97 lien. The Med asserted in a letter to Ms. West's lawyer that under its institution agreement with BCBST, the payment from BCBSA was "contingent" upon either final acceptance of the payment by BCBSA and the Med or recovery from the third-party tortfeasor of the full, unadjusted amount of the hospital lien.

### JAMMIE HEAGS-JOHNSON

Jammie Heags-Johnson was injured in a motor vehicle accident on July 21, 2006, in Memphis, Tennessee. She was treated at the Med and released on the same day. On August 3, 2006, the Med perfected a lien in the amount of $4,304.92 for the medical services it

---

[1]The three original plaintiffs were Diane West, Jammie Heags-Johnson, and Charles Garland. Charles Garland's complaint is not before this Court because we limited our order granting the Med's application for permission to appeal to the cases involving Diane West and Jammie Heags-Johnson.

provided Ms. Heags-Johnson on July 21, 2006. On November 22, 2006, the Med perfected an amended lien that included the original $4,304.92, as well as an additional $338.42 – the unadjusted cost of additional medical services provided to Ms. Heags-Johnson on August 8, 2006.

At the time of the accident, Ms. Heags-Johnson was insured by Accordia National Insurance which is part of the Baptist Health Services Group of the Mid-South, Inc. ("BHSG"). In accordance with its provider agreement with BHSG, the Med made a $880.98 adjustment to the costs of the services it provided to Ms. Heags-Johnson on July 21, 2006, and billed her insurance company for $2,952.96. Similarly, the Med made a $67.68 adjustment to the costs of the services it provided on August 8, 2006, and billed Ms. Heags-Johnson's insurance company for $216.59. Ms. Heags-Johnson's insurance company paid the Med $3,169.55. The remaining balance of $525.12 represented co-pays owed to the Med by Ms. Heags-Johnson.

Despite receiving payments from Ms. Heags-Johnson's insurance company and Ms. Heags-Johnson's offer to pay the remaining balance of her co-pays, the Med it declined to release its $4,643.34 lien. In doing so, the Med reiterated its position that its hospital lien was for the total unadjusted amount of Ms. Heags-Johnson's charges.

On December 26, 2007, Mses. West and Heags-Johnson[2] filed a class action suit[3] in the Circuit Court for Shelby County seeking to quash the Med's liens and to recover damages. The lawsuit alleged, in part, that the Med had violated the HLA, the Tennessee Consumer Protection Act, and the federal Employee Retirement Income Security Act of 1974 ("ERISA"), and accused the Med of attempted conversion, intentional interference with contract rights, and intentional and/or negligent misrepresentation. Because of the ERISA claim, the Med removed the case to the United States District Court for the Western District of Tennessee. After Mses. West and Heags-Johnson filed an amended complaint omitting the ERISA claim, the case was remanded to the circuit court.

On February 9, 2010, Mses. West and Heags-Johnson filed a second amended complaint, alleging that the Med was engaging in illegal "balance billing"[4] by receiving

---

[2]Mr. Garland was also a named plaintiff. Because Mr. Garland's complaint is not before this Court, we will hereafter refer only to Mses. West and Heags-Johnson. Nothing in this opinion should be construed to apply to hospital liens filed against patients who are TennCare enrollees.

[3]The record does not reflect that this lawsuit has been certified as a class action.

[4]"Balance billing" commonly refers to the practice by which a health care provider bills a patient for the balance of its charges or fees over and above the amount that the insurance company has agreed to pay (continued...)

-4-

payment from its patients' insurance companies while, at the same time, perfecting a hospital lien for the full, unadjusted amount of the cost of the medical services provided. The amended complaint also alleged that, because the Med was contractually guaranteed to receive payments from insurance companies at an agreed-upon rate, it was required to accept these payments as "payments in full."

On May 18, 2010, Mses. West and Heags-Johnson moved to quash the Med's liens. They argued:

> [Ms. West's and Ms. Heags-Johnson's] health insurance carrier paid the Med pursuant to their contract with the Med. "Adjustments" were made by the Med's billing office and in each case the "account balance" was zero or a small co-pay balance remained. Because the account balances were paid [Ms. West and Ms. Heags-Johnson] requested the Med release its lien. Even though the Med was paid in full pursuant to agreements with [Ms. West's and Ms. Heags-Johnson's] health carriers[,] the Med, through counsel, refused to release their liens.

In its September 22, 2010 response to the motion to quash, the Med asserted that it did not "balance bill" its patients. With regard to Ms. West's claim, the Med pointed to Section 6.12 of the BCBST Institution Agreement which provided:

> Otherwise, except as set forth above, nothing in this BCBST Agreement, including the [Med]'s Agreement to accept amounts received under this Agreement as payment in full from BCBST for all covered services or the [Med]'s promise to hold BCBST Members harmless for the cost of Covered Services except for any applicable co-payments, co-insurance and deductible, shall preclude any collection efforts by the [Med], to collect the appropriate amount due the [Med] from a third party that might have legal responsibility for the services rendered.

The Med further insisted that its collection practices are harmonious with both the HLA and its contracts with the insurance companies and that the lien does not attach to the insured party, but rather to the third-party tortfeasor. With regard to Ms. Heags-Johnson, the Med

---

[4](...continued)
as a reasonable charge. *See* Carolyn R. Cody, *Professional Licenses and Substantive Due Process: Can States Compel Physicians to Provide Their Service?*, 22 Wm. & Mary Bill Rts. J. 941, 954 (2014).

simply argued that nothing in its network contract with BHSG[5] "prohibits the Med's attempt to recover funds from liable third parties."

The trial court held hearings on the motion to quash on September 27, 2010 and on September 7, 2011. The court denied the motion to quash on November 4, 2011. In its final order entered on June 11, 2012, the trial court stated:

> The Court finds that the facts contained in the Affidavit of Judy Briggs[6] filed September 22, 2010 and the Affidavit of Gary McCullough[7] filed September 22, 2010 are true and accurate, including, but not limited to, the following:
>
>> (1) The Med pursues payment for medical services from liable third-party tortfeasors;
>>
>> (2) The Med always returns and voids payments made by . . . a private health plan payor either before or after receipt of payment from a liable third party;
>>
>> (3) The Med never keeps [the] private health plan payor payment and the payment received from liable third-party tortfeasor;
>>
>> (4) In all cases where the Med recover[]s payment from a third-party tortfeasor, the Med returns any and all payments made by . . . a private health plan payor to the private health plan payor.
>
> The Court holds that the Med's actions are authorized by . . . the Med's Institution Agreement with Blue Cross and Blue Shield of Tennessee except as to Blue Cross Blue Shield of Tennessee when they request release of said lien provided for in

---

[5]The BHSG contract is not part of the record on appeal. Even though the Med produced this contract during discovery, neither party made this contract part of the record.

[6]Ms. Briggs, the Med's executive director of revenue cycle, discussed in her affidavit the process used by the Med to accept and return payments received from insurance companies.

[7]Mr. McCullough, one of the Med's attorneys, explained the process the Med used to file and perfect hospital liens.

Amendment 1 attached hereto as Exhibit "A", both of which were submitted to and considered by the Court.

Mses. West and Heags-Johnson appealed to the Court of Appeals. They raised only one issue – "[w]hether Tennessee's Hospital Lien Act . . . permits a hospital to enforce a hospital lien claiming one-third (⅓) of an individual's personal injury settlement after the hospital accepted payment from an individual's health insurance carrier as 'payment in full,' creating a zero balance with the hospital and extinguishing the lien."

The Court of Appeals reversed the trial court. Its reasoning proceeded as follows. First, the court noted that in a majority of jurisdictions, "the debt owed by the patient to the hospital is the foundation of the hospital's lien right." *West v. Shelby Cnty. Healthcare Corp.*, No. W2012-00044-COA-R3-CV, 2013 WL 500777, at *13 (Tenn. Ct. App. Feb. 11, 2013), *reh'g denied* (Mar. 12, 2013). Second, the court decided that "the debt must be fully extinguished in order to say that the lien is also extinguished." *West v. Shelby Cnty. Healthcare Corp.*, 2013 WL 500777, at *14. Third, the court concluded that where "there is no debt, there can be no lien[.]" *West v. Shelby Cnty. Healthcare Corp.*, 2013 WL 500777, at *25 (quoting *Satsky v. United States*, 993 F. Supp. 1027, 1029 (S.D. Tex. 1998)). Based on its earlier conclusion that patients are the third-party beneficiaries of the contract between a hospital and their insurance companies, the court found that the payments made by Mses. West's and Heags-Johnson's insurance companies extinguished the debt for their medical services, except with regard to the co-pays and deductibles owed by the patients, and remanded the case to the trial court with directions to quash the Med's liens. *West v. Shelby Cnty. Healthcare Corp.*, 2013 WL 500777, at *26.

We granted the Med's Tenn. R. App. P. 11 application for permission to appeal. However, we limited the grant to the Med's issues with regard to its liens against Mses. West and Heags-Johnson.

## II.

This appeal requires us to interpret and apply the statutes governing hospital liens. Accordingly, both the general principles governing statutory construction and the principles governing the construction of lien statutes apply. As a general matter, the courts must construe lien statutes strictly because the General Assembly has created the lien and has defined its scope and operation. The courts do not have the power to waive these statutory requirements or impose new ones. *McDonnell v. Amo*, 162 Tenn. 36, 41, 34 S.W.2d 212, 213 (1931); *Vulcan Materials Co. v. Gamble Constr. Co.*, 56 S.W.3d 571, 573-74 (Tenn. Ct. App. 2001); *see also Smith v. Chris-More, Inc.*, 535 S.W.2d 863, 863 (Tenn. 1976) (holding that the provisions of lien statutes must be "strictly followed"); *Phifer v. Gulf Oil Corp.*, 218

Tenn. 163, 170, 401 S.W.2d 782, 785 (1966) (holding that statutory liens may only be enforced in circumstances provided for in the legislation).

In our effort to effectuate the General Assembly's purpose without broadening the lien statute beyond its intended scope, we must avoid interpreting lien statutes so narrowly that we frustrate the General Assembly's purpose in creating the lien. *General Elec. Supply Co. v. Arlen Realty & Dev. Corp.*, 546 S.W.2d 210, 213 (Tenn. 1997); *Arnstein Realty Co. v. Williams*, 163 Tenn. 69, 74, 40 S.W.2d 1007, 1008 (1931); *Winter v. Smith*, 914 S.W.2d 527, 544 (Tenn. Ct. App. 1995). Accordingly, the courts must begin with the plain, normal, and accepted meaning of the language contained within the statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). If the language is clear, we must apply that plain meaning. *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014). If ambiguity exists, we may look to legislative history and other sources to ascertain the General Assembly's purpose. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012).

This case also requires us to review and construe the respective contracts that the Med entered into with BCBST and BHSG. The canons of contract construction direct us to first look to the plain language of the contract and to ascertain and effectuate the parties' intent as reflected in that language. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Our focus is on the four corners of the entire contract, the circumstances in which the contract was made, and the parties' actions in fulfilling their contractual obligations. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 465 (Tenn. 2012).

If the contractual language is clear and unambiguous, the literal meaning of the contract controls the dispute, *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008), and the language used in the contract is construed using its "plain, ordinary, and popular sense." *Bob Pearsall Motors v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). If, however, contractual provisions prove to be ambiguous (where more than one reasonable interpretation of the provision exists), the courts will employ other rules of contract construction to determine the parties' intent. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). One of these principles is that ambiguous contract provisions will be construed against the drafter of the contract. *Kiser v. Wolfe*, 353 S.W.3d 741, 748 (Tenn. 2011); *Betts v. Tom Wade Gin*, 810 S.W.2d 140, 143 n.4 (Tenn. 1991).

The construction of a statute and its application to the facts of a particular case involves a question of law. The interpretation of a written contract is likewise a question of law. Accordingly, we review these questions de novo without a presumption of correctness. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013) (construction of statutes); *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 92 (Tenn. 2012) (interpretation of written contracts).

## III.

Resolving this dispute requires us to address three related matters. First, we shall briefly address the general nature of statutory liens. Second, we shall review the background and purpose of the liens authorized by the HLA. Finally, we will construe the provisions of the HLA that are relevant to this dispute, and then apply these provisions to the facts of this case.

## A.

In the broadest sense, a lien is a legal claim or charge on property used as security for the payment of a debt. *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 443 (Tenn. Ct. App. 1994). The existence of a lien presupposes the existence of a debt. *Shipley v. Metropolitan Life Ins. Co.*, 25 Tenn. App. 452, 454, 158 S.W.2d 739, 741 (1941) (holding that "there must be an established obligation before a lien may be declared to secure it"). When the underlying debt is extinguished, the basis for the lien is extinguished as well. Thus, a lien lasts "usu[ally] until a debt or duty it secures is satisfied." Black's Law Dictionary 1006 (9th ed. 2009).

Liens are classified as either possessory or non-possessory. A possessory lien empowers a creditor to take actual possession of the debtor's property as security for the payment of the debt. *See Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999). As the name implies, a non-possessory lien enables the creditor to obtain a legally enforceable security interest in a debtor's property without taking possession of the property.[8]

## B.

The non-possessory hospital lien at issue in this case is not a common-law lien. It was created by the General Assembly in 1970.[9] The General Assembly had recognized that the hospitals had been losing money by providing care to individuals who did not pay their hospital bills, even though they had recovered monetary damages for their injuries from the third-party tortfeasors.[10] Because of these losses, the hospitals had increased their charges to their patients. The purpose of the lien was to "ensure that hospital bills are paid . . . by

---

[8]Contrary to the Med's assertion in its brief, liens have far more legal significance than simply giving notice to third parties of the lienor's interest in the debtor's property.

[9]Act of Feb. 20, 1970, ch. 527 Tenn. Pub. Acts 533 (codified at Tenn. Code Ann. §§ 29-22-101 to -107 (2012)). Many other state legislatures had created similar liens immediately prior to and during the Great Depression. Meta Calder, *Florida's Hospital Lien Laws*, 21 Fla. St. U. L. Rev. 341, 352 (1993).

[10]Tenn. Op. Att'y Gen., No. 94-067 (May 13, 1994), 1994 WL 200787, at *1.

setting up an orderly method for the establishment of liens on [the] settlements or judgments [obtained by the patients who had been treated by the hospital]."[11]

This Court recently observed that the statutory lien embodied in the HLA "was enacted for the very humane purpose of encouraging physicians, hospitals, and nurses to extend their services and facilities to indigent persons who suffer personal injuries through the negligence of another, by providing the best security available to assure compensation for services and facilities." *Shelby Cnty. Health Care Corp. v. Nationwide Ins. Co.*, 325 S.W.3d 88, 93 (Tenn. 2010) (quoting *Buchanan v. Beirne Lumber Co.*, 124 S.W.2d 813, 815 (Ark. 1939)).

Thus, the dual purposes of the HLA were to promote the availability of hospital care and to assure hospitals that they could be compensated for the services they provide. In this regard, the HLA serves the same purpose as health insurance. However, a debt owed by a patient to a hospital is the foundation of a lien under the HLA. Thus, the lien can exist only as long as the patient owes a debt to the hospital.

## C.

The HLA has undergone very few revisions since it was first enacted forty-four years ago. *Shelby Cnty. Heath Care Corp. v. Nationwide Mut. Ins. Co.*, 325 S.W.3d at 93. For the purposes of this opinion, the controlling and operative provision is the statute creating the lien itself. Tenn. Code Ann. § 29-22-101(a) states:

> Every person, firm, association, corporation, institution, or any governmental unit, including the state of Tennessee, any county or municipalities operating and maintaining a hospital in this state, shall have a lien for all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person in the case of such person's death, on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance.

Tenn. Code Ann. § 29-22-101(a). By its plain terms, this language limits the application of the lien to "all reasonable and necessary charges for hospital care, treatment and maintenance

---

[11]Tenn. Op. Att'y Gen., No. 94-067, 1994 WL 200787, at *1.

of ill or injured persons." A hospital's charges and a patient's debt are two sides of the same coin. After all, a debt is nothing more than charges that have not been paid. Thus, our first task is to determine what "all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons" includes.

The debt the patient owes to the hospital must be based on "reasonable and necessary charges." Tenn. Code Ann. § 29-22-101(a). The concept of "reasonable and necessary" medical expenses is well known to the bench and bar. Employees who sustain work-related injuries are entitled to have their employer pay the "necessary and reasonable medical expenses" arising from the injury. *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 537 (Tenn. 2006); *Moore v. Town of Collierville*, 124 S.W.3d 93, 99 (Tenn. 2004). Similarly, recoveries for medical expenses in personal injury cases are limited to those expenses that are "reasonable and necessary." *Roberts v. Davis*, No. M2000-01974-COA-R3-CV, 2001 WL 921903, at *4 (Tenn. Ct. App. Aug. 7, 2001) (No Tenn. R. App. P. 11 application filed). Finally, among the categories of damages that can be awarded in health care liability actions is the "cost of reasonable and necessary medical care." Tenn. Code Ann. § 29-26-119 (2012).

In these contexts, and in the context of the HLA, "necessary" limits the charges to the cost of the medical care that was or will be required to treat the injury. *Street v. Levy (Wildhorse) Ltd. P'ship*, No. M2002-02170-COA-R3-CV, 2003 WL 21805302, at *4 (Tenn. Ct. App. Aug. 7, 2003) (No Tenn. R. App. P. 11 application filed); *see also Sibbing v. Cave*, 922 N.E.2d 594, 604 (Ind. 2010). There is no indication in this record that the parties disagreed with regard to the necessity of the medical services the Med provided to Mses. West and Heags-Johnson. Accordingly, for the purpose of this opinion, we deem the medical services provided to Mses. West and Heags-Johnson, and therefore the medical charges, necessary.

There is likewise no indication that the parties disagreed that the medical services the Med provided to Mses. West and Heags-Johnson were reasonable, in the sense that they were proportionate to the injuries Mses. West and Heags-Johnson sustained. However, the record does reflect that the parties disagreed about the reasonableness of the amount of the Med's charges for these services. This is understandable because the Med had two versions of its costs – one for Mses. West and Heags-Johnson and their insurance companies and another for the lien and the third-party tortfeasor. Accordingly, we must decide which version of the Med's costs is the reasonable cost for the purpose of Tenn. Code Ann. § 29-22-101(a).

The presumption in Tenn. Code Ann. § 24-5-113(a)(1) (2000) that itemized medical bills are necessary and reasonable does not apply to this case. That presumption applies only to personal injury actions brought in any court by injured parties against the persons responsible for causing their injuries. Tenn. Code Ann. § 24-5-113(a)(2). In addition, the

presumption does not apply when the total cost of the medical bills exceeds $4,000. Tenn. Code Ann. § 24-5-113(a)(3). The claims made by Mses. West and Heags-Johnson are not personal injury claims against the persons who caused their injuries, and the amount of each claim exceeded $4,000. Accordingly, we must assess the reasonableness of the Med's charges without the presumption that they are reasonable.

The Med's non-discounted charges reflected in the amount of the liens it filed against Mses. West and Heags-Johnson should not be considered reasonable charges for the purpose of Tenn. Code Ann. § 29-22-101(a) for two reasons. First, the amount of these charges is unreasonable because it does not "reflect what is [actually] being paid in the market place."[12] Because "virtually no public or private insurer actually pays full charges[,] . . . [a] more realistic standard is what insurers actually pay and what the hospitals [are] willing to accept."[13] *See also Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1144 (Cal. 2011) (noting that "a medical care provider's billing price for particular services is not necessarily representative of either the cost of providing those services or their market value"); *Provena Covenant Med. Ctr. v. Department of Revenue*, 925 N.E.2d 1131, 1150 (Ill. 2010) (noting that the hospital's "established" rates were more than double the actual costs of the care).[14]

---

[12]*What's the Cost?: Proposals to Provide Consumers with Better Information about Healthcare Service Costs: Hearing Before the Subcomm. on Health of the House Comm. on Energy and Commerce*, 109th Cong. 99 (2006) (statement of Dr. Gerard Anderson, Professor, Bloomberg School of Public Health & School of Medicine at Johns Hopkins University; Director, Johns Hopkins Center for Hospital Finance and Management) ("Anderson").

[13]Anderson, *supra* note 12.

[14]Just months ago, the Supreme Court of West Virginia upheld a damages award based on the hospital's posted costs rather than on the actual amount that the hospital accepted in full payment for the services it provided. *Kenny v. Liston*, 760 S.E.2d 434, 440 (W. Va. 2014). Justice Loughry noted in dissent:

> Given the current complexities of health care pricing structures, it is simply absurd to conclude that the amount billed for a certain procedure reflects the "reasonable value" of that medical service. Like retailers who raise the price of their goods by twenty-five percent before having a ten percent off sale, medical providers utilize the same sort of tactic to ensure a profit. In fact, "[b]ecause so many patients, insured, uninsured, and recipients under government health care programs, pay discounted rates, hospital bills have been called 'insincere,' in the sense that they would yield truly enormous profits if those prices were actually paid."

*Kenney v. Liston*, 760 S.E.2d at 451 (Loughry, J., dissenting) (quoting *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d at 1142.

The second basis for concluding that the Med's non-discounted charges are not reasonable stems from its contracts with BCBST and BHSG. The Med furthered its own economic interest when it agreed in these contracts to discount its charges for patients insured by BCBST and BHSG. *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d at 1144 (noting that "[i]nsurers and medical providers negotiate rates in pursuit of their own business interests"); *see also Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1295 (11th Cir. 2010) (noting that hospitals enter into contracts with private insurers expecting an increase in the number of the insurer's policy holders as patients); *Galvan v. Northwestern Mem'l Hosp.*, 888 N.E.2d 529, 538-39 (Ill. App. Ct. 2008) (noting that a hospital's contract with an insurer benefits the hospital because payment is guaranteed).[15]

We have already held that persons insured by an insurance company are intended third-party beneficiaries of the contract between their insurance company and a hospital. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 620 (Tenn. 2004). Thus, with regard to an insurance company's customers, "reasonable charges" are the charges agreed to by the insurance company and the hospital. *Nishihama v. City & Cnty. of San Francisco*, 112 Cal. Rptr. 861, 867 (App. Ct. 2001); *Hoffman v. Travelers Indem. Co. of Am.*, 2013-1575, p. 10 (La. 5/7/2014); 144 So.3d 993, 1000. The Med's contract with BCBST and BHSG defined what the reasonable charges for the medical services provided to Mses. West and Heags-Johnson would be.

**D.**

Based on its contracts with BCBST and BHSG, the Med could charge Mses. West and Heags-Johnson no more than the amount permitted by the contract. There is no disagreement that the Med billed BCBSA $3,215.72 for the medical services it provided to Ms. West. There is likewise no disagreement that BCSBA paid the Med $3,215.72. No conclusion can be drawn other than that Ms. West's debt to the Med for the medical services it provided her has been extinguished. Because Ms. West's debt had been extinguished, the Med's lien should have been extinguished. Accordingly, we agree with the Court of Appeals that the trial court erred by failing to quash the Med's lien against Ms. West.

It is also undisputed that the Med billed BHSG $3,169.55 for the medical services it provided to Ms. Heags-Johnson and that it also billed Ms. Heags-Johnson $525.12 for her

---

[15]Following the Great Depression, hospitals created insurers such as Blue Cross to provide "a prepayment mechanism to assure a stable source of revenues, particularly from lower and middle-income patients . . . Insurance programs developed by these corporations - called Blue Cross plans - guaranteed patients and hospitals that bills would be paid." Sylvia A. Law & Barry Ensminger, *Negotiating Physicians' Fees: Individual Patients or Society? (A Case Study in Federalism)*, 61 N.Y.U. L. Rev. 1, 9 (1986).

co-pays. There is no dispute that BHSG paid the Med $3,169.55 but that Ms. Heags-Johnson has not yet paid the Med the $525.12. Accordingly, because the Med's charges for its medical services have not yet been fully paid, the trial court properly declined to quash the Med's lien against Ms. Heags-Johnson.[16]

## IV.

We need not tarry long with the Med's argument that, independent of the HLA, its contract with BCBST empowers it to place a lien on Ms. West's potential recovery from the person who injured her. There is no question that the contract between the Med and BCBST reflects their agreement that the Med may pursue a recovery from third parties whose wrongful conduct caused the patient's injuries.

A contract is an agreement between two or more parties that creates obligations that are legally enforceable by the contracting parties. *General Am. Life Ins. Co. v. Armstrong*, 182 Tenn. 181, 187, 185 S.W.2d 505, 507 (1945) (holding that contracts embody "the agreement of the parties as to the obligations which each is to incur towards the other"); *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993) (holding that "[t]he rights and obligations of [the] contracting parties are governed by their written agreements"); *see also Edmunds v. Delta Partners*, L.L.C., 403 S.W.3d 812, 823 (Tenn. Ct. App. 2012); *United Am. Bank of Memphis v. Gardner*, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985); 21 Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:1, at 2 (2006). While a contract can establish rights and govern the conduct of the parties to the contract, it cannot establish rights against persons who are neither parties to the contract nor third-party beneficiaries of the contract.

The person who injured Ms. West was not a party to the contract between the Med and BCBST and was certainly not an intended third-party beneficiary of that contract. Accordingly, the Med's contract with BCBST cannot create a contract claim that the Med can pursue against the person who injured Ms. West.[17]

In addition to contracts, legally enforceable duties can arise from statutes or by operation of the common law. With one notable exception,[18] the HLA does not impose a

---

[16]The Med's lien against Ms. Heags-Johnson will be extinguished when she pays her outstanding bill.

[17]Subrogation rights can arise from contracts, equitable principles, or statutes. *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999). This opinion does not address, and therefore, does not affect any contractual right of subrogation a patient might grant to a hospital.

[18]Tenn. Code Ann. § 29-22-104(b)(1) creates a statutory cause of action for damages for the
(continued...)

legally enforceable duty on third-party tortfeasors to the hospitals that treat the persons they injure. Similarly, persons who injure others are not liable in tort to the hospitals who treat the persons they injure. Accordingly, under the law as it presently exists, hospitals in Tennessee do not have a contractual, statutory, or tort claim against the persons who caused their patients' injuries.[19]

## V.

We affirm the judgment of the Court of Appeals reversing the trial court's refusal to quash the Med's lien against Ms. West. However, we reverse the Court of Appeals' judgment with regard to Ms. Heags-Johnson and affirm the trial court's judgment because Ms. Heags-Johnson has not yet fully extinguished her debt to the Med. We remand the case to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed in equal proportions to the Shelby County Healthcare Corporation and its surety and to Jamie Heags-Johnson for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[18](...continued)
impairment of a hospital lien against one who accepts a release or satisfaction of a claim or who makes a settlement of a claim without first obtaining the release or satisfaction of the hospital lien. There is no indication in this record that the Med has pursued a claim for impairment of its lien against either Mses. West or Heags-Johnson or against the third-parties who injured them.

[19]Even though the contract between the Med and BHSG is not in the record, our holding is equally applicable to any claim the Med has asserted against the person or persons who caused Ms. Heags-Johnson's injuries.