

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2016 Session

## CHARLESAN WOODGETT, ET AL. v. JOHN R. VAUGHAN, JR., ET AL.

**Direct Appeal from the Circuit Court for Maury County**
**No. 14898     Robert L. Jones, Judge**

---

### No. M2016-00250-COA-R3-CV

---

This appeal arises from a jury trial. The plaintiff filed a premises liability suit against the defendant-homeowners after she allegedly fell and sustained injuries while viewing the defendants' home as a prospective buyer. After a two-day jury trial, the jury returned a verdict in favor of the defendant-homeowners, finding that they were not at fault for the plaintiff's injuries. The plaintiff raises numerous issues on appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Terry Renease Clayton, Nashville, Tennessee, for the appellants, Charlesan Woodgett, individually and as Administrator ad Litem for Reginald Woodgett, deceased.

Patrick Arnold Flynn and Seth Michael Lasater, Columbia, Tennessee, for the appellees, John R. Vaughan, Jr. and Hilda Vaughan.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

John and Hilda Vaughan ("the Vaughans") owned a home in Maury County, Tennessee and listed it for sale with a realtor. The Vaughans moved out of the home and removed all of their belongings. Reginald and Charlesan Woodgett were interested in the home and contacted the listing realtor to inquire about viewing it. Mr. Woodgett was himself a realtor, so the listing realtor allowed the Woodgetts to view the home themselves without accompanying them.

During the viewing, Mrs. Woodgett allegedly fell and sustained injuries while traversing down a step that provided access to an area of the attic. The attic doorway was located in the wall of an upstairs bonus room. Below the doorway was a large landing or platform that was raised 16.5 inches off the floor and measured 52 inches wide by 31 inches deep. To facilitate access to the raised landing, the Vaughans had engaged a contractor to build a wooden box that would be used as a step up to the landing. The box itself was 9.5 inches high, and it measured 39 inches wide and 10.75 inches deep. It was constructed with "two-by-twelves" and covered in carpet. The Vaughans sometimes moved the step in order to accommodate their furniture, so it was not fastened to the landing itself. The Vaughans and their family members used the step for twenty years without incident. However, according to Mrs. Woodgett, when she attempted to traverse down the step, it "gave way" and caused her to fall.

Mrs. Woodgett filed this lawsuit against the Vaughans alleging that the step constituted a dangerous condition and that the Vaughans had a duty to warn her about its potential danger.[1] She further alleged that the Vaughans were negligent in failing to properly secure the step in violation of county building codes.

A jury trial was held over the course of two days in October 2015. At the conclusion of the trial, the jury returned a verdict finding that the Vaughans were not at fault. The trial court entered judgment on the jury verdict and dismissed the complaint. Mrs. Woodgett filed a motion for judgment notwithstanding the verdict, to alter or amend, or in the alternative for a new trial, but the trial court denied the motion. Mrs. Woodgett timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Mrs. Woodgett lists the following five issues in her brief on appeal, as slightly reworded:

1. Whether the trial court erred in finding there was no evidence that an unsafe or dangerous condition existed;

2. Whether the trial court erred by allowing the jury to see the surveillance video;

---

[1]The complaint was originally filed by Mr. and Mrs. Woodgett, and it included a claim for loss of consortium on behalf of Mr. Woodgett. Mr. Woodgett died during the proceedings below, and Mrs. Woodgett was appointed as the administrator ad litem for Mr. Woodgett and substituted in his place as plaintiff in these proceedings. For ease of reference, we will refer to Mrs. Woodgett as the singular plaintiff for purposes of this opinion.

3.      Whether it was reversible error for defense counsel to ask the jurors to protect Maury County;

4.      Whether it was reversible error for the trial judge to instruct the jurors that property owners are only liable to a guest if they had actual or constructive notice of a defect;

5.      Whether the Tennessee Supreme Court's decision in *West v. Shelby County Healthcare Corp.*, 459 S.W.3d 33 (Tenn. 2014) is limited to the hospital lien act or also applicable to personal injury actions filed against a tortfeasor.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

### III. DISCUSSION

### A.      *Defining the Issues*

At the outset, it is necessary to identify the issues properly raised and briefed by Mrs. Woodgett on appeal in order to define the scope of our review on appeal. "'Scope of review' defines the issues that may be reviewed by an appellate court when an order or judgment has been properly appealed." *Hodge v. Craig*, 382 S.W.3d 325, 333 n.2 (Tenn. 2012). It refers to the matters the appellate court is permitted to examine. *Id.* The scope of our review depends largely on the issues properly presented on appeal. *Id.* at 333-34. Issues are to be raised and presented in the manner prescribed by Tennessee Rule of Appellate Procedure 27. *Id.* at 334. Appellants must include in their brief "a statement of the issues they desire to present to the court *and* an argument with respect to each of the issues presented." *Id.* at 334-35 (emphasis added); *see* Tenn. R. App. P. 27(a)(4) (providing that briefs must contain a "statement of the issues presented for review").

"The requirement of a statement of the issues raised on appeal is no mere technicality." *Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011). In *Hodge*, the Tennessee Supreme Court emphasized the importance of properly presenting issues for review and indicated that "a properly framed issue may be the most important part of an appellate brief." *Id.* at 334 (citing Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 83 (2008); David E. Sorkin, *Make Issue Statements Work for You*, 83 Ill. B.J. 39, 39 (Jan.1995)). "Rather than searching for hidden questions, appellate courts prefer to know immediately what questions they are supposed to answer." *Id.* (citing Bryan A. Garner, *Garner on Language & Writing* 115 (2009); Robert L. Stern, *Appellate Practice*

*in the United States* § 10.9, at 263 (2d ed. 1989)). "The issues should be framed as specifically as the nature of the error will permit in order to avoid any potential risk of waiver." *Id.* at 335 (citing *Fahey v. Eldridge*, 46 S.W.3d 138, 143-44 (Tenn. 2001); *State v. Williams*, 914 S.W.2d 940, 948 (Tenn. Crim. App. 1995)).

Parties must also present an argument with respect to each of the issues. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). "The adversarial system of justice is premised on the idea that 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" *Malmquist v. Malmquist*, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at *11 n.21 (Tenn. Ct. App. Mar. 25, 2011) (quoting *State v. Northern*, 262 S.W.3d 741, 767 (Tenn. 2008) (Holder, J., concurring in part and dissenting in part)). "Parties must thoroughly brief the issues they expect the appellate court to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009).

In sum, appellate courts may properly decline to consider issues that have not been raised *and* briefed in accordance with the applicable rules. *Id.*

> An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7). By the same token, an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).

*Hodge*, 382 S.W.3d at 335 (citation omitted).

The first issue listed in Mrs. Woodgett's brief is "[w]hether the trial court erred in finding there was no evidence that an unsafe or dangerous condition existed." However, she does not analyze this issue in the argument section of her brief. Because Mrs. Woodgett failed to develop an argument regarding this issue, we deem the issue waived. *See Hodge*, 382 S.W.3d at 335.

Mrs. Woodgett's brief also lists an issue regarding the trial court's jury instructions. The argument section of her brief contains the following section, which we quote in full, to address this issue:

4

This court's jury instruction, "Owners of property are not responsible for an injury to a visitor who is injured by a defect, unless it is shown that the owner had actual or constructive noticed [sic] of the existence of the defect.", [sic] was in error. The judgment of a trial court will not be set aside based on an erroneous jury instruction unless it appears that the erroneous instruction more probably than not affected the judgment of the jury. Tenn. R. App. P. 36(b); *Gorman v. Earhart*, 876 S.W. 2d 832 (Tenn. 1994).

Again, we conclude that Mrs. Woodgett failed to develop an argument in support of her issue or, at best, "merely construct[ed] a skeletal argument." *See Sneed*, 301 S.W.3d at 615. We accordingly deem this issue waived. It is not the role of this Court to research and construct an appellant's argument. *Id.*

Within the argument section of Mrs. Woodgett's brief, she suggests that some of the trial court's evidentiary rulings during the jury trial were erroneous. For example, Mrs. Woodgett contends that the trial judge committed reversible error by excluding her expert witness. She also complains that she was "not allowed to present testimony regarding the county building codes" to support her claim of negligence per se. However, Mrs. Woodgett's "issues" did not designate any issue on appeal regarding the trial court's ruling excluding her expert testimony. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rule of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.'" *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). Because Mrs. Woodgett failed to present an issue for review challenging the trial judge's ruling on expert testimony, we deem her arguments to that effect waived.

### B.    Surveillance Video

The first issue Mrs. Woodgett properly presented and briefed on appeal is whether the trial court erred by allowing the jury to see a surveillance video.

At trial, Mrs. Woodgett testified that after her fall in the Vaughans' home, she "really couldn't do anything because everything bothered [her]." She testified that she and her husband used to enjoy walking, but since the accident, she "can't walk a lot" and "can't stand too long." She testified that she cannot cook as often because of her difficulty standing. She also testified that she "can't bend" and "can't stand straight up"

after bending or sitting. She said she does not use stairs. Mrs. Woodgett testified that she limped and dragged her leg for three to four years after the fall and still was not active by the time of trial seven years later.[2]

The Vaughans retained a private investigator to observe and record Mrs. Woodgett during her daily activities outside her home. At trial, they called the private investigator to testify and sought to introduce his surveillance videos. Mrs. Woodgett objected to the surveillance videos on the ground that they were irrelevant and unduly prejudicial. She claimed that the videos only showed her running errands around town and getting in and out of her car, and therefore, they were irrelevant and did not "add anything to the case." She also claimed that the videos were unduly prejudicial because the surveillance video showed her driving on the interstate between the locations at a speed of 85 to 90 miles per hour. In response, the Vaughans argued that the videos were probative considering Mrs. Woodgett's testimony that she limped and dragged her leg during the depicted timeframe, and the video showed Mrs. Woodgett walking in and out of various locations, walking in heels, standing outside talking with a friend, and getting in and out of a Cadillac Escalade without difficulty. The trial judge allowed the jury to see the surveillance videos upon concluding that they were probative as to Mrs. Woodgett's credibility, her symptoms, and the effects of the alleged injury. On appeal, Mrs. Woodgett asserts that the trial judge abused his discretion in allowing the jury to see the video because it "held [Mrs. Woodgett] out as a person of means, driving a Cadillac Escalade, driving several other cars, shopping . . . and driving fast on the interstate."

Appellate courts review a trial court's decisions regarding the admissibility of evidence for an abuse of discretion. *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citing *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014)).

Evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Just "because evidence is prejudicial does not mean the evidence must be excluded as a matter of law." *State v. Carruthers*, 35 S.W.3d 516, 577

---

[2]The delay between the incident in 2008 and the trial in 2015 was apparently due to a voluntary nonsuit and refiling.

(Tenn. 2000). Excluding otherwise relevant evidence under Rule 403 "'is an extraordinary step that should be used sparingly.'" *White v. Beeks*, 469 S.W.3d 517, 528 (Tenn. 2015) (quoting *Levine v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007)). "To decide whether visual evidence is admissible, the court determines the relevance of the evidence and weighs its probative value against any undue prejudice." *State v. Willis*, 496 S.W.3d 653, 726 (Tenn. 2016). Evidence is "'unfairly prejudicial' if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.*

We cannot say that the trial judge abused his discretion in admitting the video surveillance tapes in this case. Given Mrs. Woodgett's testimony about her physical limitations, video evidence of her walking in heels and climbing in and out of a large vehicle was certainly relevant to the issues at trial. The brand of that vehicle and the speed at which she drove do not lead us to conclude otherwise or to deem the video inadmissible. The trial court did not abuse its discretion by concluding that the probative value of the video was not *substantially* outweighed by the danger of unfair prejudice. *See State v. Adams*, 405 S.W.3d 641, 658 (Tenn. 2013) (reviewing the trial court's balancing of probative value and unfair prejudice for abuse of discretion).

### C. Closing Argument

In her next issue on appeal, Mrs. Woodgett asserts that "it was reversible error for counsel for [the Vaughans] to ask jurors to protect Maury County." In support of this issue, Mrs. Woodgett's brief states:

> Further, the Plaintiffs' are residences [sic] of Sumner County and are being represented by two attorneys from Davidson County, who all just happen to be black. Counsel for the Defendants made a statement during closing argument that was highly prejudicial and served no purpose but to inflame the all-white jury when he stated, "...Ladies and gentleman of the jury you have to protect Maury County." Maury County was not a party to the trial, so that statement served no probative value.

Notably, Mrs. Woodgett does not cite to any location in the record where this statement was allegedly made. This Court has carefully reviewed the transcript of the jury trial and specifically the closing arguments made by the attorneys, and we are confident that no such statement was made by defense counsel.

Counsel for the Vaughans did reference Maury County during closing argument:

The Judge is going to instruct you in a little bit about the law in Tennessee,

7

and it's going to include references to foreseeability and reasonably foreseeable, as well as what a reasonable person under circumstances similar to what have been presented today and yesterday would do. You are the voice of Maury County, essentially, as you sit as jurors. You make the decisions in Maury County based on what has been presented to you from this chair over the last two days as to what is wrongful conduct, what is negligence, what you consider to be enough to establish that the Vaughans somehow owe Ms. Woodgett compensation.

. . . .

. . . Was there anything in the history of that step that would suggest to the Vaughans, "This is a problem, this is dangerous, this is a condition that you need to fix," or this is a condition that you need to put a warning sign up and tell people when they come to see your house, "Be careful, this step moves"? And again, you are the deciders of that for Maury County and for this trial. It's not just the question between Ms. Woodgett and the Vaughans, this is what is the standard in Maury County based on your collective judgment, the 12 of you that will sit in judgment of this case.

Obviously, this excerpt is a far cry from the statement that counsel for Mrs. Woodgett includes in her brief purportedly as a direct quote: "Ladies and gentleman of the jury you have to protect Maury County."[3]  It also contains no improper racial bias or innuendo "to inflame the all-white jury."  We find no merit in this issue.

### D. Damages

In the final issue raised on appeal, Mrs. Woodgett questions whether the Tennessee Supreme Court's decision in *West v. Shelby County Healthcare Corp.*, 459 S.W.3d 33 (Tenn. 2014), is limited to the hospital lien act or also applicable to damages in personal injury actions filed against a tortfeasor.  Because the jury ruled in favor of the defendants and awarded no damages, and we are affirming that decision on appeal, this argument regarding the appropriate amount of damages is pretermitted.

---

[3]Counsel's misrepresentation to this Court is even more concerning because he made the same allegation in his motion for new trial in the court below.  Mrs. Woodgett's post-trial motion contained the same paragraph, copied verbatim, that appears in her brief on appeal.  The trial court's order denying the motion states, "With regard to Plaintiffs' claims of racial bias in the trial: The Court finds that there was no statement made by counsel for the Defendants, or otherwise, related to race at the trial of this cause and that Plaintiffs' claims are unfounded."  We would remind counsel that "[w]hile it is entirely proper for counsel in his brief to show errors, and apply the law to them, he is not permitted to insert matters which are defamatory, scandalous, impertinent and untrue." *Ward v. Univ. of S.*, 354 S.W.2d 246, 249 (Tenn. 1962).  In raising this unfounded argument on appeal, counsel chose to ignore not only the written transcript of the proceedings below but also the trial court's previous ruling that the alleged statement did not occur.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed. Costs of this appeal are taxed to the appellant, Charlesan Woodgett, individually and as Administrator ad Litem for Reginald Woodgett, deceased, and her surety, for which execution may issue if necessary.

<br>

_____

BRANDON O. GIBSON, JUDGE