IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2019 Session

## MSM DEVELOPMENT, LLC V. WILLIAM STEWARD ET AL.

**Appeal from the Chancery Court for Roane County**
**No. 2017-23        Frank V. Williams, III, Chancellor**

_____

### No. E2019-00441-COA-R3-CV
_____

A commercial tenant transferred its interest in a lease to two individuals through a document called an assignment.  The rental term set forth in the lease was fourteen months longer than the rental term set forth in the assignment.  The transferees only paid rent for the term set forth in the assignment, and the landlord filed a complaint in an effort to collect the rent for the additional fourteen months.  The trial court concluded that the document transferring the initial tenant's interest was a sublease rather than an assignment because the term in the assignment was shorter than the term set forth in the lease.  The transferor appealed, and we reverse the trial court's judgment because the assignment specified that in the event of a conflict between the lease and the assignment, the lease controlled.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

William A. Reeves, Knoxville, Tennessee, for the appellant, MSM Development, LLC.

Thomas Lynn Tarpy and John David Haines, Knoxville, Tennessee, for the appellees, William Steward and Jennifer Steward.

### OPINION

#### I. FACTUAL AND PROCEDURAL BACKGROUND

MSM Development, LLC ("MSM") was the landlord of commercial property in Lenoir City, Tennessee, and it entered into a five-year lease (the "Lease") with East Tennessee Pizza, LLC ("ETP").  The Lease was dated September 21, 2010, and it

provided in Section Two that the five-year term was to begin "upon TENANT's acceptance of the premises by executing Exhibit B herein." Exhibit B was titled "Lease Commencement Agreement," and it provided that the payment of rent was to begin on June 1, 2011, and that the Lease was to "end at midnight on the 30th day of May, 2016, unless sooner terminated or extended as therein provided."

William and Jennifer Steward entered into an agreement with ETP and MSM that was titled "Assignment and Assumption of Lease for Premises at Lenoir Mills Retail Center" (the "Assignment"). The Assignment stated that it was effective as of November 1, 2012, and it provided, in pertinent part, as follows:

> WHEREAS, Assignor desires to assign its interests in and to the Lease to Assignee, and Landlord desires to evidence its consent to such assignment; and
>
> NOW, THEREFORE, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and for other good and valuable consideration given and received by Landlord, Assignor, and Assignee, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:
>
> 1. <u>Assignment of Lease by Assignor</u>. Assignor does hereby assign all of its right, title, and interest in, to, and under the Lease to Assignee.
>
> 2. <u>Assumption by Assignee and Release of Assignor</u>. Assignee hereby assumes and agrees to perform all of the covenants, obligations, and duties of Assignor under the Lease from and after the Effective Date. Assignee shall promptly pay all rental and other payments due under the Lease directly to Landlord, and such payments by Assignee shall be credited against the payment obligations of Assignee as tenant under the Lease. If Assignee fails to make any payment as and when due, then Landlord shall have the right to collect the amount due directly from Assignee, Assignor and/or Guarantor.
>
> . . . .
>
> 6. <u>Acknowledgements by Assignee</u>. Assignee hereby acknowledges that the Lease expires on March 31, 2015. Assignee hereby acknowledges that he will have the same rights, privileges, responsibilities and liabilities as Assignor has under the Lease. The parties hereto expressly agree that the Lease and all exhibits or addenda thereto, if any, are incorporated herein by reference as fully as if its terms and provisions were herewith set forth in

full. Upon default under the Lease, if any, Assignee agrees that he will not remove any tenant improvements to the Premises.

      7. <u>Severability & Definitions</u>. In the event of any conflict between the terms and provisions of the Lease and this Agreement, the terms and provisions of the Lease shall in all cases control. All defined terms herein shall have the same meaning as the defined terms set forth in the Lease, unless such defined terms are otherwise redefined in this Agreement.

. . . .

      9. This instrument shall supersede any prior understandings, written or oral, between the parties respecting the subject matter hereof.

The Stewards paid rent to MSM for the use of the premises through March 2015. MSM asserted that the Stewards were liable for rent through May 31, 2016, based on Exhibit B to the Lease. The Stewards, however, claimed they were liable for rent only through March 31, 2015, based on paragraph 6 of the Assignment. The parties were unable to resolve their conflict, and MSM ultimately filed a complaint on March 7, 2017, in an effort to collect the money that it claimed the Stewards owed. MSM asserted it was entitled to $125,449.55, which includes fourteen months of rent, late fees equal to 10% of the monthly rental amount, and a $16 per day late fee for each day the lease is in default. MSM also sought an award of its litigation expenses and attorney's fees. The Stewards denied that they owed any rent and asserted the defense of laches, claiming that MSM delayed filing the complaint for the purpose of running up late fees. The Stewards also asserted that MSM failed to mitigate its damages.

The Stewards moved to dismiss the complaint, and MSM moved for summary judgment on its claims. The trial court denied the Stewards' motion to dismiss and ordered the parties to submit a joint stipulation of facts to assist it in ruling on MSM's motion for summary judgment. On February 12, 2019, the trial court entered an order in favor of the Stewards and dismissed MSM's complaint. It held that the Assignment between ETP and the Stewards was a sublease that expired on March 31, 2015, and that the Stewards "have no liability to Plaintiff under the Assignment after March 31, 2015." MSM appealed the trial court's judgment. It argues that the court erred by ruling that the Assignment was a sublease rather than an assignment to the Stewards of the Lease.

## II. ANALYSIS

The interpretation of a contract is a question of law. *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014); *Allmand v. Pavletic*, 292 S.W.3d 618, 625 (Tenn. 2009). We review questions of law de novo, affording the trial court's

- 3 -

conclusions no presumption of correctness. *West*, 459 S.W.3d at 42 (citing *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 92 (Tenn. 2012)).

"'A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties.'" *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *Allmand*, 292 S.W.3d at 630). A court gleans the parties' intent by "examining the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Id*. (quoting *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011)). The terms of a contract "should be construed harmoniously to give effect to all provisions and to avoid creating internal conflicts." *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996); *see also World Sales, Inc. v. Belz Inv. Co.*, No. 02A01-9212-CH-00345, 1994 WL 8155, at *3 (Tenn. Ct. App. Jan. 13, 1994). When the language used in a contract is clear and unambiguous, the literal meaning of the words controls its interpretation. *West*, 459 S.W.3d at 42 (citing *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008)). Neither MSM nor the Stewards contend that any of the documents at issue are ambiguous.

MSM asserts that ETP assigned the Stewards all of its interest under the Lease through the Assignment, whereas the Stewards contend that the Assignment was actually a sublease that conveyed less than all of ETP's interest in the Lease. The difference between an assignment and a sublease is that an assignment "conveys the whole term, leaving no interest or reversionary interest in the assignor," whereas a sublease "grants the subtenant an interest in the leased premises less than the lessee's, or reserves to the lessee a reversionary interest in the term." *First Am. Nat'l Bank v. Chicken Sys. of Am., Inc.*, 510 S.W.2d 906, 908 (Tenn. 1974); *see Cherry v. First State Bank*, 112 S.W.3d 129, 134 (Tenn. Ct. App. 2003). When an assignment is made, the assignee "'steps into the shoes of the assignor' with regard to the matters covered by the assignment." *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 226 (Tenn. Ct. App. 2000) (quoting *Aetna Cas. & Sur. Co. v. Tenn. Farmers Mut. Ins. Co.*, 867 S.W.2d 321, 323 (Tenn. Ct. App. 1993)). As a result, "an assignment does not extinguish the underlying contract, but rather it transfers the assignor's contract rights against the other contracting party to the assignee who succeeds to the assignor's rights under the underlying contract." *Id.* (citing *Pac. E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 959 (Tenn. Ct. App. 1995)).

The Assignment explicitly refers to the Lease and states that the Lease is attached to the Assignment. In one of the WHEREAS clauses of the Assignment, ETP states its desire "to assign its interests in and to the Lease" to the Stewards, and then in paragraph 1, ETP "does hereby assign all of its right, title, and interest in, to, and under the Lease" to the Stewards. In paragraph 2, the Stewards "hereby assume[] and agree[] to perform all of the covenants, obligations, and duties of [ETP] under the Lease from and after the Effective Date," which was defined in the Assignment as November 1, 2012. The parties agreed in paragraph 6 of the Assignment that "the Lease and all exhibits or addenda

- 4 -

thereto, if any, are incorporated herein by reference as fully as if its terms and provisions were herewith set forth in full."

The Lease that is expressly incorporated into the Assignment states in Section Two that the term of the Lease is five years and that it begins "upon TENANT's acceptance of the premises by executing Exhibit B herein." Exhibit B provides that the term of the Lease "commenced on the 1st day of March, 2011, and rent commenced on the 1st day of June, 2011, and Lease shall end at midnight on the 30th day of May, 2016, unless sooner terminated or extended as therein provided." The Assignment states in paragraph 6 that "Assignee hereby acknowledges that the Lease expires on March 31, 2015." Paragraph 7 of the Assignment provides that "In the event of any conflict between the terms and provisions of the Lease and this Agreement, the terms and provisions of the Lease shall in all cases control."

ETP expressed its intent to assign all of its interests under the Lease to the Stewards in two different places in the Assignment. ETP did not reserve any interest under the Lease or express any intent or desire to return to the leased premises following the Stewards' rental thereof. No explanation is provided in the record of how the March 31, 2015 date came to be inserted into the Assignment in paragraph 6.

In an effort to harmonize and give effect to the various provisions of the Assignment and the Lease, we focus on the provision in paragraph 7 of the Assignment, which states that the terms of the Lease control any conflict between the Lease and the Assignment. The Lease conflicts with the Assignment with regard to the end date of the rental term. Based on the language of the Assignment, particularly paragraph 7, we conclude that the Assignment was an assignment, not a sublease, and that the parties intended for ETP to assign all of its interests and liabilities under the Lease to the Stewards.

III. CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion, including, but not limited to, the determination of the amount owed by the Stewards and the validity of the Stewards' defenses of laches and failure to mitigate damages. Costs of the appeal shall be assessed against the appellees, William and Jennifer Steward, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE