IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 7, 2017 Session

## MARK KARSONOVICH v. LINDA LEE KEMPE

**Appeal from the Chancery Court for Williamson County**
**No. 45845      James G. Martin, III, Chancellor**

———————————————

### No. M2017-01052-COA-R3-CV

———————————————

This case involves the grant of a Tenn. R. Civ. P. 12.02(6) motion to dismiss a complaint for declaratory judgment. Two years after the parties' final divorce was entered, Mr. Karsonovich lost his job and filed a complaint for declaratory judgment to determine his alimony obligations. Mr. Karsonovich sought a declaration that the alimony provision was void and unenforceable because the provision was ambiguous and against public policy. Ms. Kempe filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss the complaint, arguing that the provision was unambiguous and not void against public policy. The trial court agreed with Ms. Kempe and granted the motion to dismiss. The court also awarded Ms. Kempe her attorney's fees incurred from defending the suit. We reverse the trial court's decision to dismiss the complaint because there was an actual controversy for the court to decide. However, the trial court also decided the controversy at issue when it determined that the provision was neither ambiguous nor void against public policy, with which we agree. Thus, we affirm the court's decision on the merits of the complaint. We reverse the trial court's decision to award Ms. Kempe her attorney's fees and remand for the trial court to determine whether attorney's fees are still appropriate based upon our reversal of the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Todd Godwin Cole, II, and Shea Thomas Hasenauer, Brentwood, Tennessee, for the appellant, Mark Karsonovich.

Gregory Dye Smith, Brenton Hall Lankford, and Ann Ralls Niewold, Nashville, Tennessee, for the appellee, Linda Lee Kempe.

**OPINION**

Mr. Karsonovich and Ms. Kempe were divorced by order of the court on April 1, 2014. The final decree incorporated their Marital Dissolution Agreement ("MDA") and Permanent Parenting Plan. The MDA contained an alimony provision which stated:

Alimony: Husband shall pay to wife monthly non-modifiable transitional alimony as follows in the amount(s) and time period(s) listed hereinbelow:

$1,500.00 per month from February 1, 2014 until August 31, 2016;
$2,000.00 per month from September 1, 2016 until January 31, 2019;
$1,000.00 per month from February 1, 2019 until November 1, 2027.

Wife's alimony shall be secured by life insurance on Husband's life in the amount of $200,000.00, and Wife shall be named primary irrevocable beneficiary of the entire $200,000. Husband must show proof of the entire policy to Wife 30 days after entry of Final Decree and every year thereafter, on the anniversary of the Final Decree.

Said alimony award shall be paid directly to Wife as illustrated hereinabove.

Mr. Karsonovich's employment was terminated in early June of 2016, and his income decreased to weekly payments of $275.00, which he received from the Florida Department of Economic Opportunity Unemployment Benefits. Four months later, on October 16, 2016, Mr. Karsonovich filed a verified petition to modify the final divorce decree, citing a material and substantial change in circumstances as to why the MDA's alimony provision should be modified. Mr. Karsonovich later voluntarily nonsuited the petition.

Then, on January 12, 2017, Mr. Karsonovich filed a complaint for declaratory judgment which sought a declaration as to whether the MDA's alimony provision was (1) ambiguous and unenforceable; (2) ambiguous but enforceable as to length, modifiability, and terms for suspension of Mr. Karsonovich's alimony obligation; or (3) *void ab initio* as a matter of public policy. Mr. Karsonovich argued that the term "non-modifiable transitional alimony" was ambiguous due to the alimony payments' duration and the increase from the first set of payments to the second.

On March 3, 2017, Ms. Kempe filed a motion to dismiss Plaintiff's complaint, arguing the MDA provision was unambiguous and not void as against public policy. The trial court agreed with Ms. Kempe and, on April 13, 2017, granted the motion, finding that the "parties voluntarily contracted to provisions beyond the scope of the statute that

the subject transitional alimony would be non-modifiable. The Court further found that the alimony language in the parties' [MDA] is unambiguous and does not violate public policy." The court then gave the parties time to file briefs on the issue of attorney's fees and, on May 10, 2017, the court entered an order awarding Ms. Kempe her attorney's fees.

Mr. Karsonovich then appealed.

ISSUES

Mr. Karsonovich raises five issues on appeal:

1. Under Tenn. R. Civ. P. 12.02(6), did a claim exist upon which relief could be granted when the Appellant, Mr. Karsonovich, filed a Complaint for Declaratory Judgment for a declaration of rights regarding the alimony provision of his Marital Dissolution Agreement with the Appellee, Ms. Kempe?

2. Under Tennessee's law governing attorney fees, should the Chancery Court's grant of the Appellee's request for attorney fees be overturned because the Tenn. R. Civ. P. 12.02(6) Motion to Dismiss was improperly granted?

3. Under Tennessee case law, including principles of efficiency and judicial economy, should this Court of Appeals rule on the legal questions of whether the Marital Dissolution Agreement's alimony provision is ambiguous or void as a matter of public policy?

4. Under Tennessee case law, should the Marital Dissolution Agreement's alimony provision be declared unenforceable because it is ambiguous?

5. Under Tennessee case law and public policy, should the Marital Dissolution Agreement's alimony provision be declared void as a matter of public policy?

Ms. Kempe additionally raises the issue of whether she is entitled to attorney's fees and expenses on appeal.

ANALYSIS

I. TENN. R. CIV. P. 12.02(6) MOTION TO DISMISS A COMPLAINT FOR DECLARATORY JUDGMENT

The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted is to "'test the sufficiency of the complaint.'" *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 373 (Tenn. Ct. App. 2003) (quoting *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003)). In determining whether the pleadings state a claim upon which relief can be granted, only the legal sufficiency of the complaint is tested, not the strength of the plaintiff's proof. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

> Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

*Id*. (citing *Cook v. Spinnaker's of Rivergate, Inc*., 878 S.W.2d 934, 938 (Tenn. 1994)).

However, when we review a Rule 12.02(6) motion to dismiss a declaratory judgment action, our review is slightly different. *Blackwell v. Haslam*, No. M2011-00588-COA-R3-CV, 2012 WL 113655, at *7 (Tenn. Ct. App. Jan. 11, 2012). As this court has previously explained, "Tennessee Rule of Civil Procedure 12.02(6) motions to dismiss are seldom appropriate in declaratory judgment actions *provided* there is an actual controversy that may be resolved by means of a declaration of the parties' respective rights." *Id.* (citing *Cannon Cnty. Bd. of Educ. v. Wade*, 178 S.W.3d 725, 730 (Tenn. Ct. App. 2005)).

> When considering a motion to dismiss a declaratory judgment action it is important to recognize that the general purpose of a declaratory judgment action is not to award affirmative relief, but "*to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations.*" *Wade*, 178 S.W.3d at 730 (emphasis added). In this context, the fact that the party seeking declaratory relief is not entitled to a favorable judgment—that he, she, or it will not prevail on the issue in controversy— does not mean that the parties are not entitled to the "relief from uncertainty that a declaratory judgment affords." *Id*. at 730.

\*\*\*

- 4 -

[W]hat is essential is that the party seeking the declaratory judgment state facts sufficient to demonstrate the existence of an actual controversy concerning the matter at issue in the declaratory judgment action. *See Hudson*[*v. Jones*], 278 S.W.2d [799,] 804 [Mo. Ct. App. 1953]; *see also* 1 Walter H. Anderson, *Actions for Declaratory Judgments* § 318, at 740 [2d ed. 1951].

*Id*. at *7-8.

Here, Mr. Karsonovich's complaint for declaratory judgment pleaded sufficient facts to demonstrate an actual controversy existed for the court to address: whether the alimony provision in the MDA was ambiguous or void against public policy. Mr. Karsonovich lost his job, which called into questioned his ability to pay his alimony obligation. Due to this concern and the fact that the MDA stated the alimony was non-modifiable, he sought a declaration from the court to clarify his obligation. The trial court's order stated:

The parties voluntarily contracted to provisions beyond the scope of the statute that the subject transitional alimony would be non-modifiable. The Court further found that the alimony language in the parties' Marital Dissolution Agreement is unambiguous and does not violate public policy. Thus, the Court found that the Motion to Dismiss is well-taken and therefore, granted.

The trial court granted Ms. Kempe's motion to dismiss and then ruled on the merits of the complaint. This illustrates that there was a controversy for the trial court to decide. Therefore, the trial court erred in granting Ms. Kempe's motion to dismiss because there was an actual controversy which it subsequently ruled on.

Next, we elect to rule on the merits of Mr. Karsonovich's petition. Generally, in order to preserve judicial resources, we prefer to rule on the merits of the case. *Blackwell*, 2012 WL 113655, at *10 (citing *Lindsey v. Drane,* 285 S.W. 705 (Tenn. 1926), and *Parlor v. Buckner*, 300 S.W. 565 (Tenn. 1927)). The *Blackwell* court chose not to rule on the merits because the case presented constitutional issues to which the State had yet to respond and it was possible the court needed to consider additional facts. However, the present case is distinguishable because both parties briefed the issues and there does not appear to be a need for any additional facts.

In ruling on the merits, we must first determine whether the MDA provision is ambiguous and then whether it is void as against public policy.

## A. Non-Ambiguous Language

An MDA "is essentially a contract between a husband and wife in contemplation of divorce proceedings." *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). When a trial court approves a final divorce decree, the MDA merges into the decree. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). Once the MDA is incorporated, issues governed by statute, like alimony and child support, "lose their contractual nature and become a judgment of the court." *Id.* Though aspects of an MDA lose their contractual nature, the court interprets an MDA like any other contract. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). Our interpretation of contracts is a question of law which we review de novo. *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005).

When interpreting contracts, we first determine whether the language is clear and unambiguous. *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014). If the language is clear and unambiguous, we apply the literal meaning of the contract, and "the language used in the contract is construed using its 'plain, ordinary, and popular sense.'" *Id.* (quoting *Bob Pearsall Motors v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). However, our interpretation differs if an ambiguity exists.

> If . . . contractual provisions prove to be ambiguous (where more than one reasonable interpretation of the provision exists), the courts will employ other rules of contract construction to determine the parties' intent. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). One of these principles is that ambiguous contract provisions will be construed against the drafter of the contract. *Kiser v. Wolfe*, 353 S.W.3d 741, 748 (Tenn. 2011); *Betts v. Tom Wade Gin*, 810 S.W.2d 140, 143 n.4 (Tenn.1991).

*Id.* Here, the alimony provision at issue stated:

> Alimony: Husband shall pay to wife monthly non-modifiable transitional alimony as follows in the amount(s) and time period(s) listed hereinbelow:
>
> $1,500.00 per month from February 1, 2014 until August 31, 2016;
> $2,000.00 per month from September 1, 2016 until January 31, 2019;
> $1,000.00 per month from February 1, 2019 until November 1, 2027.
>
> Wife's alimony shall be secured by life insurance on Husband's life in the amount of $200,000.00, and Wife shall be named primary irrevocable beneficiary of the entire $200,000. Husband must show proof of the entire policy to Wife 30 days after entry of Final Decree and every year thereafter, on the anniversary of the Final Decree.

Said alimony award shall be paid directly to Wife as illustrated hereinabove.

Mr. Karsonovich asserts that the provision is ambiguous based upon the fact that it describes the alimony as transitional but states that it is non-modifiable. Furthermore, he argues that the provision is ambiguous because the alimony is to last for fourteen years and increases in the second installment period. We, however, find nothing ambiguous about this language.

Although this provision may not share traditional characteristics of transitional alimony, the MDA does not define "transitional alimony" in any particular way. Thus, we assume it has the same meaning as that set forth in the statute. *See* Tenn. Code Ann. § 31-5-121(g). However, this court has previously explained that "[w]hen . . . parties expressly agree in a marital dissolution agreement that a transitional alimony obligation shall not be modifiable, such an agreement should be deemed to have force. The alimony statutes are not applicable where the parties agree in a marital dissolution agreement to terms different from those set out in the statutes." *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014) (citing *Honeycutt v. Honeycutt*, 152 S.W.2d 556, 563 n.5 (Tenn. Ct. App. 2003)) (footnote omitted). Therefore, when we read the provision, which contains agreed upon elements that are different from those contained in the statute,[1] in its "plain, ordinary, and popular sense," we find its meaning clear and unambiguous.

### B. Alimony Provision Not Against Public Policy

Mr. Karsonovich also argues that the alimony provision is void because it violates public policy. Specifically, he asserts that (1) he could be jailed for non-payment "even if such reasons are out of [Mr. Karsonovich's] control," (2) the provision conflicts with the policy set forth in Tenn. Code Ann. § 36-5-121, (3) the use of the term "transitional alimony" in the MDA contradicts the definition used by the legislature and courts and thus, it is difficult to understand the actual meaning of the provision, and (4) allowing the provision would create "a potential flood of litigation from petitioners who are unable to

---

[1] The MDA also contained the following provision:

> **VOLUNTARY EXECUTION:** Each party acknowledges that this agreement has been entered into of his or her own volition with full knowledge and information including tax consequences. In some instances, it represents a compromise of disputed issues. Each believes the terms and conditions to be fair and reasonable under the circumstances. No coercion or undue influence has been used by or against either party in making this Agreement. Each party acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this agreement, other than the representations set forth herein.

keep their alimony obligations that conflict with the wisdom of public policy." We find none of Mr. Karsonovich's arguments convincing but will address each argument in turn.

Mr. Karsonovich argues the alimony provision is void as against public policy because his non-payment of alimony due to losing his job could result in his incarceration. That fact scenario is not now before this court, and we decline to speculate about it here. We do not find that the provision is inconsistent with any Tennessee public policy and would note that a court must first find the individual willfully violated the court's order to find the individual in contempt. Tenn. Code Ann. § 29-9-102(3).

Next, the provision does not conflict with the policy contained in Tenn. Code Ann. § 36-5-121. "[T]he alimony statute specifically contemplates that divorcing parties, will at times, reach their own agreements as to support payments." *See Vick*, 2014 WL 6333965, at *4. (citing Tenn. Code Ann. § 36-5-121(n)). On the issue of the parties ability to modify transitional alimony, this court has previously concluded, "[i]n cases . . . where the parties plainly state that the agreed-upon transitional alimony is nonmodifiable, courts should hold the parties to their agreement." *Id*. That is because an MDA is a contract and parties are free to contract for provisions outside the realm of the statute. *Id*. The same logic is applicable to the increase in alimony from the first payment period to the second. The parties contracted for elements outside the statute, and these deviations from the statute do not conflict with the policy set forth in Tenn. Code Ann. § 36-5-121 because the statute explicitly contemplates separate agreements.

We also find Mr. Karsonovich's third argument unpersuasive. As stated above, "The alimony statutes are not applicable where the parties agree in a marital dissolution agreement to terms different from those set out in the statutes." *Vick*, 2014 WL 6333965, at *4. Here, the parties agreed to different terms than those laid out in the statute; therefore, the agreed terms control.

Lastly, Mr. Karsonovich argues that if we were to enforce this provision, "[p]arties may imprudently believe that they could pay large monetary obligations for an extended period of time, but later find themselves unable to do so." Mr. Karsonovich essentially argues that individuals will contract to pay alimony and then regret entering into the contract. This is not something for which we may provide relief. If a divorcing party wishes to be able to modify alimony, that party should avoid including language in the MDA stating the alimony is non-modifiable.

We find no reason to set the parties' alimony provision aside as it does not violate public policy.

In conclusion, the parties' had an actual controversy, and the trial court ruled on that controversy, ruling that the alimony provision was neither ambiguous nor void as against public policy. We agree. Therefore, the motion to dismiss should have been

denied. However, since the trial judge essentially ruled on the merits, and we agree with that ruling, we affirm the trial court's decision.

## II. ATTORNEY'S FEES INCURRED AT THE TRIAL COURT LEVEL

The trial court awarded Ms. Kempe her attorney's fees based on three cases Ms. Kempe discussed in her trial court brief. On appeal, the parties agree that this issue is governed by Tenn. Code Ann. § 20-12-119(c)(1), which provides that a trial court shall award attorney's fees to the party that prevails on a Tenn. R. Civ. P. 12.02(6) motion to dismiss. However, since we reversed the trial court's decision to grant Ms. Kempe's motion to dismiss, Tenn. Code Ann. § 20-12-119(c)(1) no longer may serve as a basis for an award of attorney's fees.

Although Tenn. Code Ann. § 36-5-103(c)[2] provides a basis for an award of attorney's fees in actions to enforce alimony, the trial court improperly awarded attorney's fees on based Tenn. Code Ann. § 20-12-119(c)(1). Therefore, we reverse and remand on the issue of attorney's fees for the trial court to exercise its discretion in determining if it is still appropriate to award Ms. Kempe her attorney's fees.

## III. ATTORNEY'S FEES ON APPEAL

Ms. Kempe also requests her attorney's fees on appeal. When dealing with the issue of attorney's fees, Tennessee courts have long adhered to the American rule, "which provides that attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). This precedent has long stood in Tennessee because "an award of attorney's fees as part of the prevailing party's damages is contrary to public policy." *Id*.

Whether to award attorney's fees on appeal is within this court's "sound discretion." *Wills v. City of Memphis*, 457 S.W.3d 30, 51 (Tenn. Ct. App. 2014) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). When considering a request for attorney's fees, we will consider "the requesting party's ability to pay, the

---

[2] Tenn. Code Ann. § 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

requesting party's success on appeal, whether the appeal was taken in good faith, and any other relevant equitable factors." *Culbertson v. Culbertson*, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014) (citing *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)).

After considering these factors, we deny Ms. Kempe's request for attorney's fees. Although Mr. Karsonovich lost on the merits of the declaratory judgment complaint, he was correct that the trial court should not have dismissed his complaint. Furthermore, the trial court erred in relying on that dismissal as a basis to award attorney's fees to Ms. Kempe. Therefore, we deny Ms. Kempe's request for her attorney's fees on appeal.

CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed equally against the appellant, Mark Karsonovich, and the appellee, Linda Lee Kempe, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE