IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 2, 2024

**KARI DALE REMUS v. BRANDON JOSEPH NUNN**

**Appeal from the Chancery Court for Robertson County**
**No. CH-16-263      Ben Dean, Chancellor**

---

**No. M2023-00589-COA-R3-CV**

---

In this post-divorce case, the husband filed a petition for declaratory judgment on the issue of whether a provision of the parties' marital dissolution agreement concerning military retirement was modifiable. The trial court dismissed the husband's petition on the ground of failure to state a claim upon which relief may be granted and ruled that the provision at issue was not modifiable. While we find that the trial court erred in granting the wife's motion to dismiss for failure to state a claim, we affirm the result reached by the trial court on the merits of the dispute. Further, we have determined that the wife was not entitled to an additional award of attorney fees at trial and is not entitled to her attorney fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Brandon Joseph Nunn.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Kari Dale Remus.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Kari Dale Remus ("Wife") and Brandon Joseph Nunn ("Husband") were divorced pursuant to a final decree entered on September 12, 2016, in which the trial court incorporated the parties' marital dissolution agreement ("MDA") and permanent parenting plan.[1] The marital dissolution agreement contained the following provisions in a section entitled, "Alimony":

> (2) As [a] form of non-modifiable rehabilitative alimony, the Husband agrees to pay the mortgage for the current marital residence (or an amount equal thereto if for some reason the Wife is no longer residing there); the car payment for the 2015 Chevy Malibu until the car is paid in full; the cell phone bill (at the rate of the current plan); the reasonable and usual utilities of the marital residence along with all other marital bills connected with the marital residence. This includes the obligation owing on the pool loan. The Husband's obligation to make these payments will forever terminate upon the minor child graduates [sic] from high school, the parties expressly agreeing that there will be no other terms or conditions that will justify the modification of this sum.

> Upon the minor child graduating high school, the Husband shall only be obligated to the [sic] pay the Wife $1,646.00 a month with the anticipated source of payment being from the Husband's Army retirement pay or other government benefits. The payment shall be made to the Wife no later than the 15th of each month directly to the Wife until such time as a direct payment can be set up through DFAS as set forth more specifically in paragraph ( ) [sic] below.

In a later paragraph, concerning military retirement, the MDA stated:

> (6) The Wife shall be awarded $1,646.00 of the Husband's military retirement account earned through his employment with the United States Army. The Wife will not make efforts to collect this sum until the obligations in paragraph 2 are met. Should the Wife's interest in the Husband's military retirement not equal at least $1646.00, the Husband shall make up the

---

[1] The permanent parenting plan stated the amount of child support owed by Husband under the child support guidelines ($942 per month) but included the following deviation: "The parties agree that neither party shall be responsible to the other for child support. So long as the Father is meeting the obligations pursuant to the Marital Dissolution Agreement."

difference such that the Wife's total money received is $1646.00. The Husband shall name the Wife as the SBP[2] beneficiary.

On August 28, 2017, Husband filed a petition to modify paragraph 2 of the MDA regarding alimony. In his petition, Husband asserted that paragraph 2 was "too vague and should therefore be set aside" and that "the award of rehabilitative alimony in this matter in perpetuity was not proper and should therefore be set aside." In the alternative, Husband requested that paragraph 2 be modified to provide that he would pay rehabilitative alimony "in a set amount for a set period of time." On April 9, 2018, before Husband's petition was to be heard by the court, the court entered an agreed order stating, in pertinent part, that paragraph 2 of the MDA was to be "modified and amended as follows":

a. Husband shall pay the following to Wife on a monthly basis:

| | |
|---|---|
| Mortgage - 963 Granite Trail, Adams, TN 37101 | $1,372.14 |
| Wife's car payment (2015 Chevrolet Malibu) | $301.00 |
| AT&T cell phone bill | $168.00 |
| Swimming pool loan | $503.66 |
| Water bill | $110.00 |
| Electric bill | $229.00 |
| Direct TV | $138.00 |
| Charter Spectrum Internet | $59.99 |
| ADT home security | $53.64 |
| Garbage pickup | $10.00 |
| Propane tank rental fee | $5.20 |
| **TOTAL:** | **$2,950.63** |

b. Husband shall make said payments on the first (1st) day of each month by directly depositing said amount into the parties' joint bank account;
c. Upon Husband's satisfaction of any of the debts previously set forth herein related to the house, vehicle, or pool loan, then the total amount Husband shall pay to Wife shall be reduced by the amount of any debts satisfied.
d. That Husband shall continue to be responsible for support of the minor child, Kori Jean Nunn (DOB: 10/07/2005), after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first; and,

_____

[2] Although not defined in the MDA, the acronym "SBP" refers to the military's Survivor Benefit Plan. *See* https://militarypay.defense.gov/Benefits/Survivor-Benefit-Program/Overview.

e. That upon said payments terminating as set forth above, paragraph 6 of the parties' Marital Dissolution Agreement entitled "Military Retirement" shall apply and be binding upon the parties, which provides that the Wife shall be awarded $1,646.00 of Husband's military retirement.

The agreed order further provided for the dismissal of Husband's petition to modify the MDA.

More than four years later, on October 17, 2022, Husband filed a "Petition for Declaratory Judgment" requesting a judgment from the court as to whether paragraph 2 of the MDA is subject to modification "upon the parties' minor child graduating from high school and Petitioner's other payments terminating." According to Husband's petition, he received "$1,879.00 per month in military retirement to which Wife would be entitled to 27% or $507.33 per month according to Defense Finance Accounting Service ("DFAS") regulation." Husband argued that "the balance of $1,138.67 would be considered alimony, which is subject to modification by the Court." Wife filed an answer and motion to dismiss for failure to state a claim upon which relief may be granted; she also asserted a counterpetition to enforce the court's final decree.

The matter was heard by the trial court on March 21, 2023, and the court entered an order on March 28, 2023, finding that the award of $1,646.00 of Husband's military retirement "was a division of property and is a final division of property." However, the court's order also included a provision allowing Husband thirty days from March 21, 2023, to do additional research and file a brief, if Husband felt it necessary, to "counter the Court's ruling that the division of property was final between the parties" and "whether there is any argument that Husband's previous conversion of a share of his military retirement to VA disability opens the door to modification of the $1,646.00 per month previously awarded to Wife."

In an "Order on Motion to Dismiss" entered on April 6, 2023, the court made additional findings, which will be discussed below as relevant to the issues raised in this appeal. The trial court concluded that Husband's petition failed to state a claim upon which relief may be granted and granted Wife's motion to dismiss. Nevertheless, the court went on to reiterate that the $1,646.00 constituted a division of marital property. The court dismissed Wife's counterclaim as moot and awarded Wife a portion of her attorney fees.

Husband appeals and presents the following issues: (1) Whether the MDA provision awarding Wife $1,646.00 per month is null and void or, in the alternative, is modifiable; (2) whether Wife is capped on the amount she can receive from Husband's military retirement; (3) whether ambiguities in the MDA should be construed against Wife; and (4) whether the issues before this court are barred by the doctrine of res judicata. Wife also presents issues for our review: (1) whether the trial court properly dismissed Husband's

petition; (2) whether the trial court should have awarded her all of her reasonable attorney fees related to her motion to dismiss; and (3) whether she should be awarded her reasonable attorney fees on appeal.

ANALYSIS

I.      Propriety of Dismissal

In this appeal, we must determine whether the trial court properly granted Wife's motion to dismiss Husband's petition for declaratory judgment on the basis of failure to state a claim upon which relief may be granted, pursuant to Tenn. R. Civ. P. 12.02(6). The propriety of a trial court's decision to grant or deny such a motion presents a question of law, which we review de novo with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894-95 (Tenn. 2011).

A motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6) "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A defendant who makes such a motion to dismiss admits the truth of the material allegations of the complaint, but avers that the allegations do not establish a cause of action.[3] *Id.* In considering the motion, the trial court is to "'"construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences."'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002))).

This Court has previously stated that a Rule 12.02(6) motion to dismiss is "'seldom appropriate in declaratory judgment actions *provided* there is an actual controversy that may be resolved by means of a declaration of the parties' respective rights.'" *Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at *2 (Tenn. Ct. App. Feb. 27, 2018) (quoting *Blackwell v. Haslam*, No. M2011-00588-COA-R3-CV, 2012 WL 113655, at*7 (Tenn. Ct. App. Jan. 11, 2012)). The following principles apply:

> "When considering a motion to dismiss a declaratory judgment action it is important to recognize that the general purpose of a declaratory judgment action is not to award affirmative relief, but '*to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations.*' [*Cannon Cnty. Bd. of Educ. v.*] *Wade*, 178 S.W.3d [725,]

---

[3] Motions like those made pursuant to Tenn. R. Civ. P. 12.02(6) are sometimes called "so what" motions because "the defendant in such a motion is saying, 'So what? The facts the plaintiff has pleaded do not state a cause of action against me.'" *Winters v. Wangler*, 898 N.E.2d 776, 779 (Ill. App. Ct. 2008).

- 5 -

730 [(Tenn. Ct. App. 2005)] (emphasis added). In this context, the fact that the party seeking declaratory relief is not entitled to a favorable judgment-- that he, she, or it will not prevail on the issue in controversy-- does not mean that the parties are not entitled to the 'relief from uncertainty that a declaratory judgment affords.' *Id.* at 730.

. . .

[W]hat is essential is that the party seeking the declaratory judgment state facts sufficient to demonstrate the existence of an actual controversy concerning the matter at issue in the declaratory judgment action. *See Hudson* [*v. Jones*], 278 S.W.2d [799,] 804 [(Mo. Ct. App. 1953)]; *see also* 1 Walter H. Anderson, ACTIONS FOR DECLARATORY JUDGMENTS § 318, at 740 [2d ed. 1951]."

*Id.* (quoting *Blackwell*, 2012 WL 113655, at *7-8).

In the present case, Husband sought a declaratory judgment regarding whether the award to Wife in paragraph 2 of the MDA is subject to modification upon the minor child's graduation from high school and the termination of Husband's other payments. This complaint pleads "sufficient facts to demonstrate an actual controversy existed for the court to address." *Id.* at *3. Thus, we must conclude that the trial court erred in dismissing the complaint for failure to state a claim. However, this error is not determinative because the trial court also considered the merits of the parties' dispute.

II.      Res Judicata

Husband argues that, "The issues before the court are not barred by the doctrine of res judicata." A trial court's decision that a claim is barred by res judicata presents a question of law, which we review de novo. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012).

In its order, the trial court stated: "The Court finds that to the extent these issues were addressed in the prior 2018 Agreed Order, that the issues raised by the Petitioner are *res judicata.*" The court's ruling does not identify what issues, if any, the court deemed to be barred by res judicata. The court then proceeded to construe the MDA and to address the question presented by Husband's declaratory judgment action. Husband has not identified any issue that the trial court refused to address on res judicata grounds. Wife attempts to define what is barred by res judicata but, without the trial court's explanation, Wife's argument amounts to speculation as to the trial court's thoughts. We decline to speculate and see no point in discussing this issue further.

III.     Divorce Decree Interpretation

We now turn to the proper interpretation of the divorce decree, in particular paragraph 2 of the MDA.  Husband makes two primary arguments regarding the $1,646.00 awarded to Wife in paragraph 2: (1) that the award is null and void or, in the alternative, nonmodifiable; and (2) that there is a cap on the amount Wife can receive from Husband's military retirement.

An MDA "is essentially a contract between a husband and wife in contemplation of divorce proceedings." *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). When a trial court approves a final divorce decree, the MDA merges into the decree. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). Though aspects of an MDA lose their contractual nature, the court interprets an MDA like any other contract. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). The interpretation of contracts is a question of law, which we review de novo. *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005).

When interpreting contracts, we first look to the language of the contract and determine whether the language is clear and unambiguous. *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014). If the language is clear and unambiguous, we apply the literal meaning of the contract, and "the language used in the contract is construed using its 'plain, ordinary, and popular sense.'" *Id.* (quoting *Bob Pearsall Motors v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). However, our interpretation differs if an ambiguity exists:

> If . . . contractual provisions prove to be ambiguous (where more than one reasonable interpretation of the provision exists), the courts will employ other rules of contract construction to determine the parties' intent. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). One of these principles is that ambiguous contract provisions will be construed against the drafter of the contract. *Kiser v. Wolfe*, 353 S.W.3d 741, 748 (Tenn. 2011); *Betts v. Tom Wade Gin*, 810 S.W.2d 140, 143 n.4 (Tenn. 1991).

*Id.*

1.   Modifiability

Husband's position is that the payments from his military retirement constitute alimony in futuro and are, therefore, subject to modification.[4]  The trial court found that

---

[4] We note that, on appeal, Husband also argues that the provision at issue is "null and void" on the theory that the retirement award was intended to be alimony in solido but that this designation is improper because alimony in solido must be for a definite sum.  Husband's declaratory judgment petition only

the award of $1,646.00 of Husband's military retirement was a division of marital property and, therefore, not modifiable.

The main provision of paragraph 2 at issue here, subsection (e) of the language added by the agreed order, states:

> That upon said payments terminating as set forth above, paragraph 6 of the parties' Marital Dissolution Agreement entitled "Military Retirement" shall apply and be binding upon the parties, which provides that the Wife shall be awarded $1,646.00 of Husband's military retirement.

Paragraph 6 of the MDA, which was not modified by the agreed order, provides, in pertinent part:

> The Wife shall be awarded $1,646.00 of the Husband's military retirement account earned through his employment with the United States Army. The Wife will not make efforts to collect this sum until the obligations in paragraph 2 are met. Should the Wife's interest in the Husband's military retirement not equal at least $1646.00, the Husband shall make up the difference such that the Wife's total money received is $1646.00.

In arguing that the $1,646.00 payment is modifiable, Husband characterizes the retirement payment as being alimony in futuro because he views it as a form of long-term support.[5] It appears that Husband's rationale for this characterization is the fact that the first reference to this payment appeared in a section entitled "Alimony" and the fact that there is no definite total amount (as contemplated by the statutory definition of alimony in solido).[6] However, both the original provision on military retirement and paragraph (e) reference the award of retirement benefits in paragraph 6 and provide that the retirement

---

addressed the question of the modifiability of the provision. The record on appeal does not reflect that the parties tried this issue by consent. Therefore, we consider the issue waived. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("Issues not raised in the trial court cannot be raised for the first time on appeal."). We further note, however, that this Court has previously stated: "'The alimony statutes are not applicable where the parties agree in a marital dissolution agreement to terms different from those set out in the statutes.'" *Karsonovich*, 2018 WL 1091735, at *4 (quoting *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014)); *see also DeLuca v. Schumacher*, No. M2019-00601-COA-R3-CV, 2020 WL 1079524, at *5-6 (Tenn. Ct. App. Mar. 6, 2020).

[5] In his argument that the provision is null and void, Husband asserted that the $1,646,00 award was alimony in solido.

[6] Tennessee Code Annotated section 36-5-121(h)(1)(A) provides: "Alimony in solido, also known as lump sum alimony, is a form of long-term support, the total amount of which is calculable on the date the decree is entered, but which is not designated as transitional alimony."

payments are to begin after the rehabilitative alimony payments. Under Tennessee law, retirement benefits that accrued during the marriage are marital property subject to equitable distribution. Tenn. Code Ann. § 36-4-121(b)(2)(B)(ii); *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn. 1996). We see no ambiguity here[7] and nothing in the language of the MDA indicating that the parties intended to treat Husband's military retirement as alimony in futuro rather than a division of marital property.

We agree with the trial court's conclusion that the division of military retirement benefits was a property division and, therefore, is not subject to modification.

### 2. Effect of federal law

Husband also argues that Wife's share of his military retirement should have been calculated differently. In particular, he asserts that the amount awarded to Wife should have been based on his actual military retirement income, excluding his disability income.[8] The trial court rejected Husband's argument in its final order:

> The issues of whether the Petitioner, subsequent to the entry of a decree and order, could convert a portion of his military retirement to VA disability, is not applicable as the Petitioner was already drawing VA disability at the time of the parties['] divorce, and furthermore, the decree provided a specific amount awarded, as opposed to a percentage of the retirement awarded that could otherwise be affected by a reduction of military retirement [vis a vis] any conversation of the same to VA disability.

As discussed below, we agree with the result reached by the trial court, albeit for different reasons.

Husband's argument stems from a federal statute, namely section 1408 of the Uniformed Services Former Spouses' Protection Act ("USFSPA"), which excludes from the definition of "disposable retired pay"[9] amounts deducted from the member's retired pay "as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38." 10 U.S.C.A. § 1408(a)(4)(A)(ii). Compensation received under

---

[7] We note that, in his appellate brief, Husband states that "the $1,646.00 awarded to [Wife] was intended to represent her share of [Husband's] military retirement based on the number of years the parties were married during [Husband's] military career."

[8] While this issue was not stated in Husband's declaratory judgment petition, the parties tried the issue by consent and the trial court addressed the issue. Therefore, we will consider it.

[9] As this Court has recognized, "disposable retired pay is commonly treated as marital and divided between spouses in divorce actions." *Hammond v. Hammond*, 680 S.W.3d 269, 273 (Tenn. Ct. App. 2023).

title 38 includes disability benefits administered by the Veterans' Administration. *See* 38 U.S.C.A. Pt. II, ch. 11; *Sample v. Sample*, 605 S.W.3d 629, 637 (Tenn. Ct. App. 2018). These provisions have raised numerous issues resulting in litigation. *See Mansell v. Mansell*, 490 U.S. 581 (1989); *Howell v. Howell*, 581 U.S. 214 (2017).

The U.S. Supreme Court held, in 1989, that a state court could not treat as marital "property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits."[10]  *Mansell*, 490 U.S. at 583.  Then, in 2017, the Court decided *Howell v. Howell*, in which the Arizona divorce decree awarded the wife 50% of the husband's military retirement. *Howell*, 581 U.S. at 218-19.  About thirteen years after the wife began receiving the military retirement benefits, the Department of Veterans Affairs determined that the husband was 20% disabled, and the husband elected to waive a portion of his military retirement pay as required for him to receive disability benefits. *Id.* at 219.  This resulted in a reduction in the amount received by the wife each month from the military retirement pay. *Id.*  The Arizona Supreme Court affirmed a lower court decision requiring the husband to pay the wife the amount necessary to ensure she received her full share of the military retirement pay as ordered in the divorce decree. *Id.*

In its decision in *Howell*, the Court reached the opposite result, relying on *Mansell*. *Id.* at 221-22.  The Court reasoned:

> We see nothing in this circumstance that makes the reimbursement award to Sandra any the less an award of the portion of military retirement pay that John waived in order to obtain disability benefits. And that is the portion that Congress omitted from the Act's definition of "disposable retired pay," namely, the portion that federal law prohibits state courts from awarding to a divorced veteran's former spouse. *Mansell, supra,* at 589, 109 S. Ct. 2023. That the Arizona courts referred to Sandra's interest in the waivable portion as having "vested" does not help. State courts cannot "vest" that which (under governing federal law) they lack the authority to give. Cf. 38 U.S.C. § 5301(a)(1) (providing that disability benefits are generally nonassignable). Accordingly, while the divorce decree might be said to "vest" Sandra with an immediate right to half of John's military retirement pay, that interest is, at most, contingent, depending for its amount on a subsequent condition: John's possible waiver of that pay.
>
> Neither can the State avoid *Mansell* by describing the family court order as an order requiring John to "reimburse" or to "indemnify" Sandra,

---

[10] In a recent opinion, this Court discussed at length the developing caselaw regarding the division of military retirement in divorce cases. *See Hammond v. Hammond*, 680 S.W.3d 269, 273-81 (Tenn. Ct. App. 2023).  For present purposes, we will address the cases necessary to resolve the case before us, which involves an MDA incorporated into the court's final divorce decree.

rather than an order that divides property. The difference is semantic and nothing more. The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to restore the amount previously awarded as community property, *i.e.,* to restore that portion of retirement pay lost due to the postdivorce waiver. And we note that here, the amount of indemnification mirrors the waived retirement pay, dollar for dollar. Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus pre-empted.

*Id.* at 221-22.

In the present case, Husband relies upon *Howell* to support his position that the amount of the award to Wife is in error. Husband retired from the military prior to the divorce. According to Husband's petition, he receives $1,857.08 in military retirement, out of which Wife "would be entitled to 27% or $507.33 per month" under the Defense Finance Accounting Service regulations. We will accept for purposes of this appeal the additional fact included only in Husband's appellate brief that he receives $3,300.70 in VA disability. He maintains that the $1,646.00 award was not calculated properly and should have been based only on his military retirement.

There is a recent Tennessee case similar to the case before us. *Hammond v. Hammond*, 680 S.W.3d 269 (Tenn. Ct. App. 2023), like the case before us, involved an MDA incorporated into the divorce decree. *Hammond*, 680 S.W.3d at 271. The terms of the MDA in *Hammond* provided that, upon the husband's retirement from the army, he would pay the wife "alimony in futuro in an amount equal to the Wife's portion of the Husband's military retired pay as calculated under this Agreement." *Id.* at 271-72. The MDA further stated: "Both parties acknowledge that this Paragraph is intended solely to protect the Wife's portion of the Husband's military retired pay in light of the Supreme Court's holding in *Howell v. Howell*." *Id.* at 272. In response to a contempt petition filed by the wife, the husband argued that the final decree was unenforceable to the extent that it required him to "indemnify the Wife against a reduction of his military retired pay caused by his obtaining VA disability benefits." *Id.* The trial court rejected the husband's argument and entered an order in favor of the wife. *Id.*

On appeal, this Court considered whether the alimony in futuro provision in the MDA violated *Howell* and was therefore unenforceable. *Id.* at 273. After discussing *Mansell* and *Howell*, the court summarized the varying state court decisions regarding the application of those decisions to various factual scenarios. *Id.* at 275-76. After reviewing the related Tennessee cases, the court concluded that there was no case addressing the issue before it: "whether divorcing spouses may negotiate an alimony arrangement requiring the

former military spouse to pay alimony in futuro in the same amount as the waived portion of retirement." *Id.* at 279. The court answered in the affirmative for the following reasons:

> First, we are persuaded by the line of cases from other jurisdictions interpreting *Howell* as inapplicable to negotiated agreements as opposed to court orders. *See, e.g.*, *Jones* [*v. Jones*], 505 P.3d [224,] 230 [(Alaska 2022)]. We agree that nothing in *Howell* suggests that service members cannot determine on their own, without court intervention, how to spend their future disability pay. 581 U.S. at 221, 137 S.Ct. 1400 (explaining that *state courts* lack the authority to vest right to disability pay in spouses); *Yourko* [*v. Yourko*], 884 S.E.2d [799,] 804 [(Va. 2023)]("[N]either Congress nor the United States Supreme Court has ever placed any limits on how a veteran can use this personal entitlement once it has been received."). To understand *Howell* as meaning that a service member may not agree to pay alimony out of his or her own disability pay is an overbroad and paternalistic reading of that case. "[P]rovided the money is paid directly to the veteran first[,]" "federal law does not prohibit a veteran from using military disability pay in any manner he or she sees fit[.]" *Yourko*, 884 S.E.2d at 804. And, as addressed above, this conclusion does not run afoul of *Vlach* as this question was not squarely addressed by that opinion. *See Harper* [*v. Harper*], [No. M2020-00412-COA-R3-CV], 2022 WL 1210467, at *5 n.4 [(Tenn. Ct. App. Apr. 25, 2022) (noting that *Vlach* only suggests in dicta that such agreements "*may* be impermissible") (emphasis added).

> In any event, the present case is further distinguishable from *Howell* and from *Vlach* because it deals with alimony as opposed to divisible marital property. *Howell* specifically provides that one remedy available to military spouses is that trial courts may consider the possibility of future waivers when calculating or recalculating "the need for spousal support." 581 U.S. at 222, 137 S.Ct. 1400. Here, the parties capitalized on this remedy by agreeing to the automatic spousal support modification ahead of time, thus saving both Husband and Wife, as well as the trial court, the time and expense of returning to court once Husband waived his retirement in favor of disability. Indeed, Husband does not contend on appeal that Wife is not in need of alimony, as he agreed to pay both transitional alimony and alimony in futuro. Rather, Husband takes issue with the fact that the MDA provides that a retirement waiver warrants an alimony modification and requires him to pay alimony in futuro in an amount equal to the amount of retirement pay to which Wife was entitled under the MDA. By way of a hypothetical, however, if the parties had not agreed on the automatic modification and amount ahead of time, Wife could have filed a petition asking the trial court to set the amount of alimony in futuro, as the parties agreed that a retirement waiver would be a material change in circumstance. Under Husband's proposed

- 12 -

reading of *Howell*, then, former military members and their ex-spouses would have to re-litigate alimony in every event of retirement waiver. Insofar as the spirit of *Howell* is to balance protection of veterans' finances with the financial well-being of their former spouses, we are unconvinced by Husband's proposed interpretation.

Finally, Husband raises his issues with the relevant MDA provision several years after the unappealed divorce decree became a final order. However, the parties were well aware of *Howell* when negotiating the MDA. Husband testified at the contempt hearing that *Howell* and the possibility of a retirement waiver was thoroughly discussed during settlement negotiations and that the alimony in futuro provision was added, with Husband's agreement, to ensure Wife's security. Emails in the record and the testimony from trial show that Husband only reversed course when he and Wife began having disagreements unrelated to alimony following the divorce. Stated simply, Husband agreed to the provision at issue knowing that, pursuant to *Howell*, there was a question as to whether the trial court would have been able to order such a provision. Husband then waited until it suited him nearly three years later to argue that federal law pre-empts the parties' arrangement.

Under such circumstances, we cannot abide Husband's argument. On a practical note, finding in favor of Husband promotes a public policy encouraging current and former service members to negotiate MDAs in bad faith, only to later waive their retirement pay and renege on an otherwise valid contract years later. Such a policy makes little sense in light of *Howell*'s clear acknowledgement that divorce courts may consider the possibility of retirement waivers when determining spousal support issues. Moreover, this Court has previously held that preemption arguments can, like most other arguments, be waived:

. . .

Nothing in either our case law or *Mansell* or *Howell* suggests that a valid contract may be invalidated years later based on an argument available to the parties when the contract was executed. Consequently, we are unpersuaded by Husband's argument that preemption is a viable argument years after the MDA was entered into and when Husband knew full well his rights under *Howell* and *Mansell*.

*Id.* at 279-81.

There are differences between the facts of our case and *Hammond*, most notably that the MDA in *Hammond* treated the military retirement as alimony in futuro. Unlike in

*Hammond*, Husband was receiving disability benefits at the time of the original divorce decree. As stated in *Hammond*, "nothing in *Howell* suggests that service members cannot determine on their own, without court intervention, how to spend their future disability pay." *Id.* at 279. Here, as in *Hammond*, Husband did not appeal the award of military retirement benefits to Wife. The parties agreed to the provisions concerning military retirement, which are more generous to Wife than federal law would allow a state court to decree. This Court has previously stated: "An MDA is a contract, and parties are free to contract for provisions outside a statute's realm." *DeLuca*, 2020 WL 1079524, at *8.

We conclude that the trial court properly rejected Husband's challenge to the military retirement provisions of the MDA.

IV.     Attorney fees

Wife argues that the trial court erred in awarding her only a portion of her attorney fees and that she is entitled to reasonable attorney fees incurred on appeal. For the reasons outlined below, we cannot agree.

The parties' MDA includes the following pertinent provision:

> **ENFORCEMENT:** In the event it becomes reasonably necessary for either party *to institute legal proceedings* to procure the enforcement of any provision of this Agreement, *that party* shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

(Emphasis added). In addressing Wife's request for attorney fees, the trial court stated, in pertinent part:

> Respondent's [Wife's] counsel requested Attorneys fees in this matter at the hearing of the matter in the amount of $1,500.00. The Court find[s] that an award of fees is appropriate based upon the Rule 12 dismissal of the Petitioner's claims, and awards the Respondent . . . the sum of $1,000.00 for her attorney's fees incurred in defending this action . . .

The issue of whether Wife was entitled to attorney fees under the MDA presents a question of law, which we review de novo. *Eberbach*, 535 S.W.3d at 479 n.7. As to the *amount* of fees awarded under an MDA, the proper standard of review is abuse of discretion. *See id.*

In support of her request for attorney fees under the MDA, Wife cites *Tigart v. Tigart*, No. M2020-01146-COA-R3-CV, 2021 WL 4352539, at *8 (Tenn. Ct. App. Sept. 24, 2021). In *Tigart*, a mother petitioned the trial court to modify the parties' parenting

plan and to hold the father in contempt. *Tigart*, 2021 WL 4352539, at \*1. The trial court ultimately ruled in the mother's favor on the petition to modify and denied her contempt petition. *Id.* Applying a provision of the MDA regarding attorney fees identical to the provision at issue here, the court denied the mother's request for attorney fees. *Id.* at \*7. On appeal, this Court reversed the trial court's denial of the mother's request for attorney fees under the MDA. *Id.* at \*8. We concluded that "the record supports the trial court's findings that Father failed to comply with the MDA" and that "it was reasonably necessary for Mother to institute legal proceedings to enforce the MDA." *Id.* We find *Tigart* distinguishable from the present case because, here, Wife did not "institute legal proceedings" as contemplated in the enforcement provision of the MDA. *See also Lattimore v. Lattimore*, No. M2018-00557-COA-R3-CV, 2019 WL 1579846, at \*1 (Tenn. Ct. App. Apr. 12, 2019) (involving a similar MDA provision and awarding attorney fees to the wife, who instituted the legal proceedings).

The MDA provision authorizes an award of reasonable attorney fees to the party who instituted legal proceedings. We are mindful of our Supreme Court's statements in *Eberbach* concerning the courts' obligation to enforce the contractual provisions of divorcing parties in their MDAs. *See Eberbach*. 535 S.W.3d at 474, 478. ("If the MDA is determined to be a valid and enforceable agreement, the terms of the parties' agreement govern the award of fees, and the court must enforce the parties' terms to the extent the agreement demands."). In this case, the trial court applied the provisions of the MDA and implicitly found it to be a valid and enforceable agreement. We must, therefore, "look to the actual text of the provision and determine whether the provision is mandatory and applicable." *Id.* at 479. Because the provision in the MDA limits its applicability to the party who instituted legal proceedings,[11] we conclude that the provision does not apply to authorize an award of attorney fees to Wife in this case.[12]

Wife also asserts that she is entitled to her attorney fees on appeal under Tenn. Code Ann. § 27-1-122, concerning frivolous appeals.[13] We respectfully decline Wife's request.

---

[11] In *Eberbach*, the MDA authorized attorney fees to "the prevailing party" in the event of legal proceedings. *Eberbach*, 535 S.W.3d at 480.

[12] To the extent that our conclusion here conflicts with the result reached in *Polster v. Polster*, No. M2020-01150-COA-R3-CV, 2021 WL 4167927 (Tenn. Ct. App. Sept. 14, 2021), this case supersedes *Polster*.

[13] Wife concedes, and we agree, that she is not entitled to an award of attorney fees under Tenn. Code Ann. § 36-5-103(c), which authorizes an award of attorney fees to the prevailing party "in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing."

CONCLUSION

The judgment of the trial court is affirmed as modified. Costs of this appeal are assessed against the appellee, Brandon Nunn, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE